**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF ARIZONA**

| | |
|---|---|
| In re | Chapter 11 |
| THREE-FIVE SYSTEMS, INC., | Case No.   05-bk-17104-RTB |
| Debtor. | |
| In re | Chapter 11 |
| TFS-DI, INC., | Case No.   05-bk-18689-RTB |
| Debtor. | |

# DISCLOSURE STATEMENT IN SUPPORT OF JOINT PLAN OF REORGANIZATION

Thomas J. Salerno
Jordan A. Kroop
**SQUIRE, SANDERS & DEMPSEY L.L.P.**
Two Renaissance Square, Suite 2700
40 North Central Avenue
Phoenix, Arizona 85004
(602) 528-4000

Counsel to Debtors

Dated:  January 6, 2006

# TABLE OF CONTENTS

I.  INTRODUCTION AND SUMMARY ...................................................................... 1
    A.  Overview .................................................................................................... 1
    B.  Notice to Holders of Claims and Equity Interests ................................. 2
    C.  Summary Of Treatment Of Claims And Equity Interests Under The Plan .......... 2
    D.  Confirmation Procedures ......................................................................... 4

II. BACKGROUND REGARDING THE DEBTORS ............................................. 6
    A.  Overview of Business Operations ........................................................... 6
    B.  Selected Financial Information for The Debtors .................................... 6
    C.  Prepetition Debt ........................................................................................ 6
    D.  Prepetition Capital Structure .................................................................. 7
    E.  Events Precipitating the Chapter 11 Cases ............................................ 7

III. SIGNIFICANT EVENTS IN CHAPTER 11 CASES ....................................... 7
    A.  Continuation of Business; Automatic Stay ............................................ 7
    B.  "First Day" and Administrative Orders ................................................. 8
    C.  Other Significant Events During the Chapter 11 Cases ........................ 8

IV. DESCRIPTION OF THE PLAN .......................................................................... 9
    A.  Introduction ............................................................................................... 9
    B.  Summary of Claims Process, Bar Date, and Professional Fees ........... 9
    C.  Classification and Treatment of Claims and Equity Interests ............ 10
    D.  Treatment of Unclassified Claims ........................................................ 10
        1.  Administrative Claims ................................................................ 10
        2.  Preserved Ordinary Course Administrative Claims ................ 11
        3.  Priority Tax Claims .................................................................... 11
        4.  Professional Fees ........................................................................ 11
        5.  Treatment .................................................................................... 11
    E.  Treatment of Classified Claims and Interests ..................................... 12
        1.  Class 1 (Priority Claims) ............................................................ 12
        2.  Class 2 (Secured Tax Claims) .................................................... 13
        3.  Class 3 (Miscellaneous Secured Claims) .................................. 13
        4.  Class 4 (General Unsecured Claims) ......................................... 13
        5.  Class 5 (Equity Interests and Equity Related Claims) ............. 14

V.  IMPLEMENTATION OF THE PLAN ............................................................. 15
    A.  Plan Funding ........................................................................................... 15
        1.  Effective Date Payments ............................................................ 15
        2.  Net Assets ................................................................................... 15
        3.  Disputed Claims ......................................................................... 15
    B.  Private Company Status ......................................................................... 15
    C.  Certificate of Incorporation and Bylaws .............................................. 15
    D.  Directors and Officers of Reorganized TFS .......................................... 16

VI. EXECUTORY CONTRACTS AND UNEXPIRED LEASES .......................... 16
    A.  Assumption and Rejection of Contracts and Leases ............................ 16

i

# TABLE OF CONTENTS
(continued)

**Page**

B. Cure of Defaults ................................................................................ 16
C. Rejection Damages Bar Date. ............................................................ 17
D. Indemnification Obligations ............................................................. 17
E. Benefit Plans. ..................................................................................... 17
    1. Generally .................................................................................. 17
    2. Regulatory Approvals .............................................................. 18
    3. Retirees .................................................................................... 18

VII. DESCRIPTION OF OTHER PROVISIONS OF THE PLAN ...................... 18
A. Substantive Consolidation ................................................................. 18
B. Vesting of Assets ............................................................................... 18
C. Discharge ........................................................................................... 19
D. Injunction .......................................................................................... 19
E. Exculpation ........................................................................................ 19
F. Release ............................................................................................... 20
G. Preserved Litigation Claims and Disputed Claims Resolution.......... 20
H. Preservation of Insurance.................................................................. 20
I. Retention of Jurisdiction After the Effective Date ............................ 20

VIII. ACCEPTANCE AND CONFIRMATION OF THE PLAN......................... 22
A. Acceptance of the Plan....................................................................... 22
B. Feasibility of the Plan ........................................................................ 22
C. Best Interests Test .............................................................................. 23
    1. Explanation .............................................................................. 23
    2. Application to the Liquidation Analysis .................................. 24

IX. CERTAIN FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN ............... 25
A. Introduction........................................................................................ 25
B. United States Federal Income Tax Consequences to the Debtors ...... 25
C. Federal Income Tax Consequences to Creditors ............................... 26
    1. Sale or Exchange of Claims..................................................... 27
    2. Accrued Interest....................................................................... 27
    3. Market Discount....................................................................... 28
    4. Other Claimholders ................................................................. 28
    5. Information Reporting and Backup Withholding ..................... 28
D. Federal income Tax Consequences to Holders of Equity Interests .... 29
E. Importance of Obtaining Professional Tax Assistance....................... 29

X. RISK FACTORS ...................................................................................... 29
A. Generally............................................................................................ 29
B. Dependence on Key Personnel .......................................................... 30
C. Reorganization Factors ...................................................................... 30
    1. Financial Considerations.......................................................... 30
    2. Risk of Non-Confirmation of the Plan..................................... 30

XI. ALTERNATIVES TO THE PLAN ............................................................ 31

**TABLE OF CONTENTS**
(continued)

A.    Continuation of the Chapter 11 Cases ................................................................. 31
B.    Alternative Plans of Reorganization ................................................................... 31
C.    Liquidation Under Chapter 7 ............................................................................. 31
XII.   CONCLUSION .............................................................................................................. 32
A.    Hearing on and Objections to Confirmation ...................................................... 32
1.    Confirmation Hearing ............................................................................ 32
2.    Deadline for Objections to Confirmation ............................................. 32
B.    Recommendation ................................................................................................ 32

## APPENDICIES TO DISCLOSURE STATEMENT

Appendix 1 – Joint Plan of Reorganization

Appendix 2 – Selected Financial Information

Appendix 3 – Liquidation Analysis

# I. INTRODUCTION AND SUMMARY

## A. Overview

Three-Five Systems, Inc. ("*TFS*") filed its voluntary petition for relief under Chapter 11 of Title 11 of the United States Code (the "*Bankruptcy Code*") in the United States Bankruptcy Court for the District of Arizona (the "*Bankruptcy Court*") on September 8, 2005. TFS-DI, Inc. ("*TFS-DI*") filed its voluntary petition for relief under Chapter 11 of the Bankruptcy Code in the Bankruptcy Court on September 22, 2005. (Each date is a "*Petition Date*" as the context requires. TFS and TFS-DI are the "*Debtors*.") The Bankruptcy Court has approved this disclosure statement (the "*Disclosure Statement*") under Bankruptcy Code § 1125 in connection with confirmation of the *Joint Plan of Reorganization* (the "*Plan*") proposed by the Debtors in these Chapter 11 cases (the "*Chapter 11 Cases*"). The Plan was filed with the Bankruptcy Court on January 6, 2006. The following introduction and summary is a general overview only and is qualified in its entirety by, and should be read in conjunction with, the more detailed discussions, information, and financial statements appearing elsewhere in this Disclosure Statement and the Plan. All capitalized terms not defined in this Disclosure Statement have the meanings given to them in the Plan. A copy of the Plan, separately filed in the Chapter 11 Cases, is **<u>Appendix 1</u>** to this Disclosure Statement.

This Disclosure Statement sets forth certain information regarding the Debtors' prepetition operating and financial history, the need to seek Chapter 11 protection, significant events that have occurred during the Chapter 11 Cases, and the anticipated reorganization of Reorganized TFS. This Disclosure Statement also describes terms and provisions of the Plan, including certain alternatives to the Plan, certain effects of confirmation of the Plan, certain risk factors associated with the Plan, and the manner in which distributions will be made under the Plan. In addition, this Disclosure Statement discusses the confirmation process and the reasons why no voting on the Plan is necessary. Certain provisions of the Plan, and thus the descriptions and summaries contained in this Disclosure Statement, may be the subject of continuing negotiations among the Debtors and various parties, may not have been finally agreed on, and may be modified. Those modifications, however, will not have a material effect on the distributions contemplated by the Plan.

Each Debtor is a proponent of the Plan within the meaning of Bankruptcy Code § 1129. The Plan contains separate Classes and proposes recoveries for holders of Claims against and Equity Interests in the Debtors. After careful review of the Debtors' current business operations, estimated recoveries in a liquidation scenario, and the prospects of ongoing business, the Debtors have concluded that the recovery to Creditors will be maximized by the reorganization of the Debtors as contemplated by the Plan.

Specifically, the Debtors believe that an orderly liquidation of all the Debtors' assets during the Chapter 11 Cases and after confirmation of the Plan provides Creditors and holders of Equity Interests with the maximum possible recovery under the circumstance. This conclusion is demonstrated by the liquidation analysis prepared by the Debtors' management with the assistance of the Debtors' financial advisors, Bridge Associates LLC ("*Bridge*").

Case 2:05-bk-17104-RTB    Doc 126    Filed 01/06/06    Entered 01/06/06 12:22:43    Desc
Main Document    Page 6 of 76

## B. Notice to Holders of Claims and Equity Interests

This Disclosure Statement is not being used to solicit votes on the Plan—as explained below, no Class of Claims or Equity Interests under the Plan is impaired and every Class is deemed to have accepted the Plan without voting under Bankruptcy Code § 1126(f). Accordingly, this Disclosure Statement has been prepared for all parties' informational purposes as required in Bankruptcy Code § 1125.

By order the Bankruptcy Court approved this Disclosure Statement as containing information of a kind and in sufficient and adequate detail required by Bankruptcy Code § 1125. The Bankruptcy Court's approval of this Disclosure Statement does not constitute either a guaranty of the accuracy or completeness of the information contained in this Disclosure Statement or the Bankruptcy Court's endorsement of the Plan.

Certain of the information contained in this Disclosure Statement is by its nature forward-looking and contains estimates, assumptions and projections that may be materially different from actual or future results. Except as otherwise specifically stated, this Disclosure Statement does not reflect any events that may occur after the date of this Disclosure Statement and that may have a material impact on the information contained in this Disclosure Statement. None of the Debtors or Reorganized TFS intend to update the information contained in this Disclosure Statement.

Except where specifically noted, the financial information contained in this Disclosure Statement has not been audited by a certified public accountant and may not have been prepared in accordance with generally accepted accounting principles.

The information contained in this Disclosure Statement is included for purposes of confirmation of the Plan and may not be relied on for any purpose. No person may give any information or make any representations, other than the information and representations contained in this Disclosure Statement, regarding the Plan.

This Disclosure Statement has been prepared in accordance and compliance with Bankruptcy Code § 1125 and Bankruptcy Rule 3016(b) and not necessarily in accordance with federal or state securities laws or other non-bankruptcy law. This Disclosure Statement has been neither approved nor disapproved by the Securities and Exchange Commission (the "*SEC*"), nor has the SEC passed on the accuracy or adequacy of the statements contained in this Disclosure Statement.

This Disclosure Statement may not be construed to be conclusive advice on the tax, securities, or other legal effects of the Plan on holders of Claims against, or Equity Interests in, the Debtors.

## C. Summary Of Treatment Of Claims And Equity Interests Under The Plan

The Plan constitutes a joint plan of reorganization for the Debtors and the substantive consolidation of the Debtors' Estates. The Plan contains definitions and rules of interpretation and provides the treatment of separate classes for holders of Claims against, and Equity Interests

in, the Debtors. As required by the Bankruptcy Code, Administrative Claims and Priority Tax Claims are not classified.

The table below summarizes the classification and treatment of the principal prepetition Claims and Equity Interests under the Plan. The classification and treatment for all Classes are described in more detail in Articles 4 and 5 of the Plan.

| Class | Description | Treatment |
|---|---|---|
| 1 | Priority Claims<br><br>**(Unimpaired; deemed to accept)** | Each holder of an Allowed Priority Claim other than a Priority Tax Claim will receive Cash in an amount equal to its Allowed Priority Claim on the later of: (i) the Effective Date, or as soon after that date as practicable; and (ii) 30 days after the Priority Claim is Allowed; unless, before the later of these two dates, the holder of the Claim and Reorganized TFS agree in writing to a different date. |
| 2 | Secured Tax Claims<br><br>**(Unimpaired; deemed to accept)** | Each holder of an Allowed Secured Tax Claim will receive Cash in an amount equal to its Allowed Secured Tax Claim on the latest of: (i) the Effective Date, or as soon after that date as practicable; (ii) any date the Bankruptcy Court may fix, or as soon after that date as practicable; (iii) 30 days after the Secured Tax Claim is Allowed; and (iv) the date on which the Secured Tax Claim is scheduled to be paid in the ordinary course of business under applicable law or regulation; unless, before the latest of the above dates, the holder of the Claim and Reorganized TFS agree in writing to a different date. |
| 3 | Miscellaneous Secured Claim<br><br>**(Unimpaired; deemed to accept)** | Each holder of an Allowed Miscellaneous Secured Claim will receive Cash in an amount equal to its Allowed Miscellaneous Secured Claim on the latest of: (i) the Effective Date, or as soon after that date as practicable; (ii) any date the Bankruptcy Court may fix, or as soon after that date as practicable; (iii) 30 days after the Miscellaneous Secured Claim is Allowed; and (iv) the date on which the Miscellaneous Secured Claim is scheduled to be paid in the ordinary course of business under applicable law or regulation; unless, before the latest of the above dates, the holder of the Claim and Reorganized TFS agree in writing to a different date. |
| 4 | General Unsecured Claims<br><br>**(Unimpaired; deemed to accept)** | (i) *Amount of Distributions.* Each holder of an Allowed General Unsecured Claim will receive from Reorganized TFS Cash in an amount equal to the amount of the Allowed General Unsecured Claim plus interest accruing from the Petition Date through the Confirmation Date at the Legal Interest Rate.<br>(ii) *Timing of Distributions.* Reorganized TFS will make at least partial distributions of Cash from the Net Assets to holders of |

| Class | Description | Treatment |
|-------|-------------|-----------|

Allowed General Unsecured Claims, beginning on the later of (A) the Effective Date, or as soon after that date as practicable and (B) 30 days after the General Unsecured Claim is Allowed, then continuing periodically until all Allowed General Unsecured Claims are paid in full and no Disputed General Unsecured Claims remain Disputed.

**9**  Equity Interests and Equity Related Claims

**(Unimpaired; deemed to accept)**

(i) *Subordination.* Under Bankruptcy Code § 510(b), each Equity Related Claim is subordinated to all Claims or Equity Interests senior or equal to the Claim or Equity Interest represented by the Equity Related Claim, except that if the Equity Related Claim relates to TFS's common stock, the Equity Related Claim has the same priority as the Equity Interests represented by that common stock.

(ii) *Amount of Distributions.* Each holder of an Allowed Equity Interest or Allowed Equity Related Claim will receive from Reorganized TFS Cash in an amount equal to the holder's Pro Rata share of the Net Assets remaining after distributions to holders of Allowed General Unsecured Claims under Section 5.04.b(i) of the Plan are complete.

(iii) *Timing of Distributions.* Reorganized TFS will only begin distributions from the Net Assets on account of Equity Interests or Equity Related Claims once sufficient Net Assets are reserved for complete distributions to holders of Allowed General Unsecured Claims under Section 5.04.b(i) of the Plan (including sufficient reserves in the Maximum Amount for all General Unsecured Claims that are Disputed at that time). Reorganized TFS will make periodic Pro Rata distributions to holders of Allowed Equity Interests and Allowed Equity Related Claims of all Net Assets converted to Cash, net of any reserves Reorganized TFS believes in good faith are necessary to pay costs associated with converting remaining non-Cash Net Assets into Cash, making such distributions, winding up the affairs of Reorganized TFS, and completing any other task or responsibility reasonably contemplated by the Plan. Once all Net Assets have been converted to Cash, Reorganized TFS will make a final Pro Rata distribution to holders of Allowed Equity Interests and Allowed Equity Related Claims in full and final satisfaction and redemption of all Allowed Equity Interests and Allowed Equity Related Claims.

## D.    Confirmation Procedures

Under Bankruptcy Code § 1126(f), if a class of claims or interests is unimpaired under a plan, that class (and each member of that class) is conclusively presumed to have voted in favor

of the plan and is not solicited to vote on the plan. In these Chapter 11 Cases, the Plan contains four Classes of Creditors and one Class of Equity Interests and Equity Related Claims. All five Classes are unimpaired, as defined in Bankruptcy Code § 1124, under the Plan. Accordingly, the Debtors will not be soliciting votes on the Plan.

The Bankruptcy Court has scheduled the Confirmation Hearing to begin on _____, 2006 at ___:___ __.m. (Arizona time) before the Honorable Redfield T. Baum, Chief United States Bankruptcy Judge, United States Bankruptcy Court, 203 North 1st Avenue, Phoenix, Arizona 85004. The Bankruptcy Court may adjourn the Confirmation Hearing from time to time without further notice except for an announcement of the adjournment date made at the Confirmation Hearing. The Bankruptcy Court has ordered that any objections to confirmation of the Plan be filed with the Clerk of the Bankruptcy Court and served so that they are **actually received** on or before _____, 2006, at 5:00 p.m. (Arizona time) by:

| *Counsel to the Debtors:* | *The United States Trustee:* |
|---|---|
| SQUIRE, SANDERS & DEMPSEY L.L.P. | OFFICE OF THE U.S. TRUSTEE |
| Two Renaissance Square | 203 North 1st Avenue |
| 40 North Central Avenue, Suite 2700 | Phoenix, Arizona 85004 |
| Phoenix, Arizona 85004 | Attn: Larry Watson, Esq. |
| Attention: Thomas J. Salerno, Esq. | Telephone: (602) 682-2600 |
|       Jordan A. Kroop, Esq. | |
| Telephone: (602) 528-4000 | |

**THE DEBTORS BELIEVE THAT THE PLAN PROVIDES THE BEST RECOVERIES POSSIBLE FOR THE HOLDERS OF CLAIMS AGAINST AND EQUITY INTERESTS IN THE DEBTORS. THE DEBTORS <u>STRONGLY RECOMMEND</u> THAT YOU SUPPORT CONFIRMATION OF THE PLAN.**

## II. BACKGROUND REGARDING THE DEBTORS

### A. Overview of Business Operations

TFS, through subsidiary companies, was a global provider of electronics manufacturing services. TFS designed and manufactured electronic printed circuit board assemblies and complete systems for customers in the computing, consumer, industrial, medical, telecommunications, and transportation industries. TFS's core capabilities allowed customers to outsource all stages of product engineering, development, materials procurement and management, manufacturing, and testing. TFS subsidiaries also provided a wide range of aftermarket support such as repairs, refurbishment, systems upgrades, and spare part manufacturing.

Virtually all TFS's operating assets and functions have been maintained and conducted at the subsidiary level. Historically, TFS conducted its businesses in various subsidiary-operated facilities throughout the world, serving various geographic areas and industry segments. (In the first quarter of 2005, North American sales represented approximately 67% of TFS's net sales; Asia, approximately 9%; and Europe, 24%, as reported in TFS's 10Q for the quarter ended March 31, 2005). In the beginning of 2004, TFS began to divest certain of its subsidiary-owned operations, including the sale of facilities in Massachusetts, Beijing, the United Kingdom, and the Philippines. As of the Petition Date, what remained were two principal facilities, each owned by a separate subsidiary: (a) TFS Electronic Manufacturing Systems, Inc., a wholly-owned subsidiary with its principal place of business in Redmond, Washington ("*TFS-EMS*"); and (b) TFS Electronics Manufacturing Services Sdn. Bhd. ("*TFS-Malaysia*"), a subsidiary wholly-owned by TFS International, Ltd. and TFS International II, Ltd., two Bermuda corporations (together, the "*Bermuda Subs*") that themselves are wholly-owned by TFS, with its principal place of business in Penang, Malaysia. In August 2005, TFS-EMS commenced its own separately administered Chapter 11 proceeding in the Bankruptcy Court. As part of that proceeding, substantially all TFS-EMS's assets were sold to Applied Technical Services Corporation as a going concern. As described below, a sale of all stock in TFS-Malaysia was completed in October 2005.

### B. Selected Financial Information for The Debtors

**Appendix 2** contains financial information pertaining to the Debtors, in the form of income statements for fiscal years 2003, 2004, and 2005 (January through October only) and a balance sheet as of the Effective Date of the Plan (assumed for purposes of the balance sheet as April 15, 2006).

### C. Prepetition Debt

As of the Petition Date, the Debtors had no significant secured or other bank debt. All the Debtors' prepetition obligations were composed primarily of vendor and contract claims. Virtually none of this indebtedness is secured by any of the Debtors' assets.

**D.      Prepetition Capital Structure**

The shares of TFS are publicly held. TFS is the ultimate holding company parent of certain operating subsidiaries. Most of TFS's subsidiaries were sold or otherwise liquidated before these Chapter 11 Cases began. TFS-DI is a wholly-owned direct subsidiary of TFS but did not maintain significant business operations as a distinct entity for any significant period before the Petition Date. (TFS-DI would be merged into Reorganized TFS on the Effective Date of the Plan.) As of the Petition Date, TFS maintained business operations through two subsidiaries: (1) TFS Electronic Manufacturing Services, Inc. ("*TFS-EMS*"), 100% of the shares of which are owned by TFS, and which is also a Chapter 11 debtor in a separately administered Chapter 11 case before the Bankruptcy Court; and (2) TFS Electronic Manufacturing Services Sdn. Bhd., a Malasian corporation 100% of whose stock were held by two Bermuda subsidiaries of TFS. During the Chapter 11 Cases, all the shares of the Malasian subsidiary were sold to a third party. In November 2005, substantially all the assets of TFS-EMS were sold to a third party under an order of the Bankruptcy Court in TFS-EMS's own Chapter 11 case.

**E.      Events Precipitating the Chapter 11 Cases**

Primarily because the Debtors' principal remaining operating assets in Redmond and Penang were positioned for sale, the Debtors determined that a Chapter 11 proceeding was the optimal means by which to maximize the value and preserve the Debtors' assets for ultimate distribution to Creditors and holders of Equity Interests. The Debtors believed and still believe that value in the Consolidated Estate will be such, as of the Effective Date, that distributions to holders of Equity Interests on account of their Equity Interests will be possible under the Plan. For that reason, the Debtors intended to use the Chapter 11 process to uncover, analyze, and evaluate all Claims against the Debtors so that no distributions to holders of Equity Interests would occur without the Debtors being sure that all Claims had been paid in full with interest at the required legal rate. The Debtors believed that only a Chapter 11 process, with the automatic stay and claims bar date provisions in the Bankruptcy Code, could ensure that all possible Claims were uncovered, analyzed, evaluated, and paid before any distributions on account of Equity Interests were made.

## III.  SIGNIFICANT EVENTS IN CHAPTER 11 CASES

**A.      Continuation of Business; Automatic Stay**

The Chapter 11 Cases were assigned to the Honorable Redfield T. Baum, Chief United States Bankruptcy Judge for the District of Arizona. Since the Petition Dates, the Debtors have continued to operate their businesses and manage their properties as debtors-in-possession under Bankruptcy Code §§ 1107(a) and 1108. No trustee has been appointed in the Chapter 11 Cases. No official committee of unsecured creditors has been appointed in the Chapter 11 Cases.

An immediate effect of the filing of the Debtors' bankruptcy petitions was the imposition of the automatic stay under the Bankruptcy Code that, with limited exceptions, enjoined the commencement or continuation of all collection efforts by creditors, the enforcement of liens against property of the Debtors, and the commencement or continuation of litigation against the Debtors. This relief provided the Debtors with the "breathing room" necessary to assess and

reorganize their business. The automatic stay remains in effect, unless modified by the Bankruptcy Court, until consummation of the Plan.

## B. "First Day" and Administrative Orders

At the beginning of the Chapter 11 Cases, the Bankruptcy Court entered several orders that the Debtors requested for purposes of maintaining ongoing business operations and to ensure that the Chapter 11 filings would not disrupt those operations. These orders, among other things, authorized the Debtors to pay certain prepetition claims and granted other relief necessary to facilitate the Debtors' transition between prepetition and postpetition business operations. The orders authorized, among other things:

- the retention of the following professionals to serve on behalf of the Debtors: Squire, Sanders & Dempsey L.L.P., as restructuring counsel; SG Cowen & Co., LLC, as investment bankers; Baker & McKenzie, as special litigation counsel; and Bridge Associates LLC, as chief restructuring officer and financial advisor;

- the maintenance of the Debtors' bank accounts and operation of their cash management systems substantially as such systems existed before the Petition Dates and the continued use of existing business forms;

- the continuation of utility services during the Chapter 11 Cases;

- the payment of employees' accrued prepetition wages and obligations associated with the Debtors' employee benefits plans; and

- procedures for the interim payment of professional fees and expenses.

## C. Other Significant Events During the Chapter 11 Cases

The Debtors obtained authority from the Bankruptcy Court to adopt and implement a key employee retention program designed to ensure that the Debtors' key management personnel will remain with the Debtors through the completion of the Debtors' restructuring under the Plan and ensure smooth business operations during the Chapter 11 Cases.

On October 31, 2005, the Bermuda Subs sold their only asset, 100% of the outstanding shares of TFS-Malaysia, to Kontron Embedded Technology, Inc. The Bermuda Subs paid the sale proceeds of approximately $2 million to TFS as a dividend.

Effective November 30, 2005, TFS rejected its lease for its principal facility in Tempe, Arizona. The landlord of that facility owes TFS approximately $2 million under a promissory note given as consideration in TFS's prior sale of the Tempe facility to the landlord. The Debtors believe that any Claim in the landlord's favor arising from the rejection of the Tempe lease is more than offset by the landlord's obligations under the note.

During, but not a part of, the Chapter 11 Cases, TFS-EMS rejected its lease agreement pertaining to its facility in Redmond, Washington. Prepetition, TFS provided that facility's landlord (the "*Redmond Landlord*") with a guaranty of TFS-EMS's obligations under that lease.

TFS-EMS's rejection of the lease created a potential claim in favor of the Redmond Landlord under the guaranty. The amount of that claim has not yet been determined, but on November 30, 2005, the Redmond Landlord drew on a letter of credit that TFS posted to secure the lease and the guaranty, and now holds $600,000 in proceeds from that letter of credit.

TFS is a creditor of TFS-EMS on account of approximately $13 million in loans TFS advanced to TFS-EMS before TFS-EMS's bankruptcy proceedings began (the "*TFS-EMS Loan Claim*"). On December 21, 2005, the Official Committee of Unsecured Creditors in the TFS-EMS Chapter 11 case filed a complaint against TFS seeking, among other things, to subordinate the TFS-EMS Loan Claim to the claims of all other creditors of TFS-EMS or, alternatively, to substantively consolidate the assets and liabilities of TFS-EMS with those of TFS. As of the date of this Disclosure Statement, TFS has not yet answered the complaint, but TFS intends to do so within the time required by applicable rules and vigorously oppose and defend against the relief sought in the complaint.

## IV. DESCRIPTION OF THE PLAN

### A. Introduction

This section provides a summary of the Plan's structure, classification, treatment, and implementation. Although the statements contained in this Disclosure Statement include summaries of the provisions contained in the Plan and in documents referred to in the Plan, this Disclosure Statement does not purport to be a precise or complete statement of all the terms and provisions of the Plan or documents referred to in the Plan. Refer to the Plan and its exhibits for a complete statement of all the Plan's terms.

The Plan itself and the documents it refers to will control the treatment of Creditors and Equity Interest holders under the Plan and will, on the Effective Date, be binding on all parties-in-interest, including holders of Claims against, and Equity Interests in, the Debtors and Reorganized TFS.

### B. Summary of Claims Process, Bar Date, and Professional Fees

The Bankruptcy Court entered an order (the "*Bar Date Order*") setting January 13, 2006 as the deadline for filing proofs of claim against, and proofs of Equity Interests in, the Debtors (the "*Bar Date*"). The Bar Date covers most Claims, including Claims of governmental units, but excludes certain other Claims, including Claims based on the rejection of executory contracts and unexpired leases, as to which the bar date is controlled by provisions of the Bar Date Order, the Plan, and orders of the Bankruptcy Court authorizing the rejection of contracts or leases. The Debtors' claims and noticing agent provided notice of the Bar Date by mailing to each person listed in the Schedules a notice of the Bar Date, a copy of the Bar Date Order, and a proof of claim form. In addition, the Debtors published notice of the Bar Date in the national editions of *USA Today* and the *Wall Street Journal*.

As noted above, the Bankruptcy Court entered an order establishing procedures for interim compensation and reimbursement of expenses of professionals (the "*Interim Compensation Order*"). The Interim Compensation Order requires professionals retained by the Debtors in these cases to submit monthly fee statements to the Debtors and requires the Debtors

to pay 80% of the requested fees and 100% of the requested expenses pending interim approval by the Bankruptcy Court. The remaining 20% of the requested fees in the fee statements are paid only on further order of the Bankruptcy Court. The Interim Compensation Order requires the Debtors' professionals to file applications for approval of their fees and expenses every three months for the preceding three-month period. All interim fee applications filed in the Chapter 11 Cases are subject to final approval by the Bankruptcy Court.

## C.  Classification and Treatment of Claims and Equity Interests.

Bankruptcy Code § 1122 requires that a plan of reorganization classify the claims of a debtor's creditors and the interest of its equity holders. The Bankruptcy Code also provides that, except for certain claims classified for administrative convenience, a plan of reorganization may place a claim of a creditor or an interest of an equity holder in a particular class only if the claim or interest is substantially similar to the other claims or interests of that class. The Bankruptcy Code also requires that a plan of reorganization provide the same treatment for each claim or interest of a particular class unless the holder of a particular claim or interest agrees to a less favorable treatment of its claim or interest.

The Debtors believe that they have classified all Claims and Equity Interests in compliance with the requirements of the Bankruptcy Code. If a holder of a Claim or Equity Interest challenges the Plan's classification of Claims or Equity Interests and the Bankruptcy Court finds that a different classification is required for the Plan to be confirmed, the Debtors, to the extent permitted by the Bankruptcy Court, intend to modify the classifications of Claims or Equity Interests under the Plan to provide for whatever classification might be required by the Bankruptcy Court for confirmation. Except if a modification of classification adversely affects the treatment of a holder of a Claim or Equity Interest, acceptance of the Plan by any holder of a Claim or Equity Interest will be deemed to be a consent to the Plan's treatment of the holder of a Claim or Equity Interest regardless of the class as to which that holder ultimately is deemed to be a member.

## D.  Treatment of Unclassified Claims

### 1.  *Administrative Claims*

An Administrative Claim is a Claim for payment of an administrative expense of a kind specified in Bankruptcy Code § 503(b), 507(b), and 546(c)(2) and entitled to priority under Bankruptcy Code § 507(a)(1). If a Claim is Allowed as an Administrative Claim under Bankruptcy Code § 365(d)(3), that Claim will also be treated as an Administrative Claim under the Plan. Administrative Claims include, for example, quarterly fees to the United States Trustee payable under Section 1930 of Title 28 of the United States Code, Claims for the payment of Professional Fees, actual and necessary costs and expenses incurred in the ordinary course of the Debtors' business or of preserving the Debtors' Estates, and Preserved Ordinary Course Administrative Claims.

The Debtors estimate that, assuming an Effective Date of April 15, 2006, unpaid Allowed Administrative Claims will total approximately $400,000, almost entirely comprising Professional Fee Claims as follows:

| Professional | Estimated Fees |
| --- | --- |
| **Bridge Associates LLC** – Financial advisors to Debtors | $ 180,000 |
| **Squire, Sanders & Dempsey L.L.P.** – Counsel to Debtors | $ 180,000 |
| **Baker & McKenzie** – Litigation counsel to Debtors | $ 25,000 |
| **CTI, Inc.** – Claims and noticing agent for Debtors | $ 15,000 |
| **TOTAL** | **$ 400,000** |

    2.    *Preserved Ordinary Course Administrative Claims*

These are generally Claims for liabilities incurred by the Debtors in the ordinary course of business during the Chapter 11 Cases relating to the purchase, lease, or use of goods and services, including services provided by the Debtors' employees.

    3.    *Priority Tax Claims*

These are Claims of a governmental entity for taxes entitled to priority under Bankruptcy Code § 507(a)(8).

    4.    *Professional Fees*

Claims for Professional Fees are Claims of professionals providing services to certain parties involved in the Chapter 11 Cases.

    5.    *Treatment.*

*Allowed Administrative Claims*. Each Allowed Administrative Claim (other than a Preserved Ordinary Course Administrative Claim or Professional Fee Claim) will be paid in full in Cash (or otherwise satisfied in accordance with its terms) on the latest of: (a) the Effective Date, or as soon after that date as practicable; (b) any date the Bankruptcy Court may fix, or as soon after that date as practicable; (c) 30 days after the Claim is Allowed; and (d) any date on which the holder of the Claim and the Debtors or Reorganized TFS agree.

*Preserved Ordinary Course Administrative Claims*. Each Allowed Preserved Ordinary Course Administrative Claim will be paid in full in Cash at Reorganized TFS's election either: (a) in accordance with the terms and conditions under which the Claim arose; or (b) in the ordinary course of Reorganized TFS's business. Payments will be made without further action by the holder of the Preserved Ordinary Course Administrative Claim.

*Allowed Priority Tax Claims*. Any Allowed Priority Tax Claim will be paid in full in Cash on the later of the Effective Date (or as soon after that date as practicable) and 30 days after the Claim is Allowed, but the Debtors or Reorganized TFS may elect to pay any Allowed Priority Tax Claim through regular installment payments in Cash of a total value, as of the Effective Date, equal to the Allowed amount of the Claim, over a period ending not later than five years after the Petition Date, and in a manner not less favorable than the most favored General Unsecured Claim provided for by this Plan. If the Debtors or Reorganized TFS so elect,

the installment payments will be made in equal quarterly installments of principal plus simple interest on the unpaid portion of the Allowed Priority Tax Claim accruing from the Effective Date at the rate of six percent per year. The first payment will be made on the latest of: (a) the Effective Date, or as soon after that date as practicable; (b) 30 days after the Claim is Allowed, or as soon after than date as practicable; and (c) another date on which the holder of the Claim and the Debtors or Reorganized TFS agree. Reorganized TFS retains the right to prepay any Allowed Priority Tax Claim, or any remaining balance of such a Claim, in full or in part, at any time on or after the Effective Date without premium or penalty.

*Professional Fee Claims*. Each Allowed Professional Fee Claim will be paid in full in Cash: (a) no later than three days after the Professional Fee Claim is Allowed; (b) on any other terms the holder of an Allowed Professional Fee Claim and the Debtors or Reorganized TFS may agree; or (c) in accordance with the terms of any applicable administrative procedures order entered by the Bankruptcy Court. Each Person seeking an award by the Bankruptcy Court of Professional Fees must file with the Bankruptcy Court and serve on Reorganized TFS its final application for allowance of compensation for services rendered and reimbursement of expenses incurred through the Confirmation Date within 60 days after the Effective Date.

All claims of Professionals for services rendered or expenses incurred after the Confirmation Date in connection with the Chapter 11 Cases and the Plan including those relating to consummation of the Plan, any appeal of the Confirmation Order, the preparation, filing, and review of Professional Fee Claims, the prosecution of Avoidance Actions and Preserved Litigation Claims, and the resolution of Disputed Claims, will be paid by Reorganized TFS on receipt of an invoice, or on such other terms as Reorganized TFS and the Professional may agree, without the need for further Bankruptcy Court authorization or entry of a Final Order. Reorganized TFS has ten days after receiving any such invoice to object to any item contained in that invoice. If Reorganized TFS and any Professional cannot agree on the amount of post-Confirmation Date fees and expenses to be paid to the Professional, the Bankruptcy Court will determine that amount.

## E.     Treatment of Classified Claims and Interests

In accordance with Bankruptcy Code § 1123(a)(1), set forth below is a designation of classes of Claims against and Equity Interests in the Debtors (except the unclassified Claims receiving the treatment described in Section IV.D above). A Claim or Interest is placed in a particular Class for the purpose of receiving distributions in accordance with the Plan only to the extent that a Claim or Equity Interest has not been paid, released, or otherwise settled before the Effective Date. The treatment of classified Claims and Equity Interests and the provisions governing distributions on account of Allowed Claims and Allowed Equity Interests is set forth in Articles 4 and 5 of the Plan. You should refer to the Plan itself for the complete provisions governing the treatment of your particular Claim or Equity Interest.

### 1.     *Class 1 (Priority Claims)*

Class 1 consists of all Priority Claims other than Priority Tax Claims. Class 1 is unimpaired by the Plan; consequently, all holders of Allowed Claims in Class 1 are deemed to have accepted the Plan and are not entitled to vote on the Plan. Each holder of an Allowed

Priority Claim other than a Priority Tax Claim will receive Cash in an amount equal to its Allowed Priority Claim on the later of: (i) the Effective Date, or as soon after that date as practicable; and (ii) 30 days after the Priority Claim is Allowed; unless, before the later of these two dates, the holder of the Claim and Reorganized TFS agree in writing to a different date.

2.     *Class 2 (Secured Tax Claims)*

Class 2 consists of all Secured Tax Claims. Each holder of a Secured Tax Claim is considered to be in its own separate subclass within Class 2, and each subclass is deemed to be a separate Class for purposes of the Plan. Class 2 is unimpaired by the Plan; consequently, all holders of Allowed Claims in Class 2 are deemed to have accepted the Plan and are not entitled to vote on the Plan. Each holder of an Allowed Secured Tax Claim will receive Cash in an amount equal to its Allowed Secured Tax Claim on the latest of: (i) the Effective Date, or as soon after that date as practicable; (ii) any date the Bankruptcy Court may fix, or as soon after that date as practicable; (iii) 30 days after the Secured Tax Claim is Allowed; and (iv) the date on which the Secured Tax Claim is scheduled to be paid in the ordinary course of business under applicable law or regulation; unless, before the latest of the above dates, the holder of the Claim and Reorganized TFS agree in writing to a different date.

3.     *Class 3 (Miscellaneous Secured Claims)*

Class 3 consists of all Miscellaneous Secured Claims other than the Secured Tax Claims in Class 2. Each holder of a Miscellaneous Secured Claim is considered to be in its own separate subclass within Class 3, and each subclass is deemed to be a separate Class for purposes of the Plan. Class 3 is unimpaired by the Plan; consequently, all holders of Allowed Claims in Class 3 are deemed to have accepted the Plan and are not entitled to vote on the Plan. Each holder of an Allowed Miscellaneous Secured Claim will receive Cash in an amount equal to its Allowed Miscellaneous Secured Claim on the latest of: (i) the Effective Date, or as soon after that date as practicable; (ii) any date the Bankruptcy Court may fix, or as soon after that date as practicable; (iii) 30 days after the Miscellaneous Secured Claim is Allowed; and (iv) the date on which the Miscellaneous Secured Claim is scheduled to be paid in the ordinary course of business under applicable law or regulation; unless, before the latest of the above dates, the holder of the Claim and Reorganized TFS agree in writing to a different date.

4.     *Class 4 (General Unsecured Claims)*

Class 4 consists of all General Unsecured Claims against the Debtors. Class 4 is unimpaired by the Plan; consequently, all holders of Allowed Claims in Class 4 are deemed to have accepted the Plan and are not entitled to vote on the Plan.

        a.     Amount of Distributions. Each holder of an Allowed General Unsecured Claim will receive from Reorganized TFS Cash in an amount equal to the amount of the Allowed General Unsecured Claim plus interest accruing from the Petition Date through the Confirmation Date at the Legal Interest Rate.

        b.     Timing of Distributions. Reorganized TFS will make at least partial distributions of Cash from the Net Assets to holders of Allowed General

Case 2:05-bk-17104-RTB    Doc 126    Filed 01/06/06    Entered 01/06/06 12:22:43    Desc
Main Document      Page 18 of 76

Unsecured Claims, beginning on the later of (A) the Effective Date, or as soon after that date as practicable and (B) 30 days after the General Unsecured Claim is Allowed, then continuing periodically until all Allowed General Unsecured Claims are paid in full and no Disputed General Unsecured Claims remain Disputed.

5.      *Class 5 (Equity Interests and Equity Related Claims)*

Class 5 consists of all Equity Interests and Equity Related Claims. Class 5 is unimpaired by the Plan; consequently, all holders of Allowed Equity Interests and Equity Related Claims in Class 5 are deemed to accept the Plan and are not entitled to vote on the Plan.

a.      Subordination. Under Bankruptcy Code § 510(b), each Equity Related Claim is subordinated to all Claims or Equity Interests senior or equal to the Claim or Equity Interest represented by the Equity Related Claim, except that if the Equity Related Claim relates to TFS's common stock, the Equity Related Claim has the same priority as the Equity Interests represented by that common stock.

b.      Amount of Distributions. Each holder of an Allowed Equity Interest or Allowed Equity Related Claim will receive from Reorganized TFS Cash in an amount equal to the holder's Pro Rata share of the Net Assets remaining after distributions to holders of Allowed General Unsecured Claims under Section 5.04.b(i) of the Plan are complete.

c.      Timing of Distributions. Reorganized TFS will only begin distributions from the Net Assets on account of Equity Interests or Equity Related Claims once sufficient Net Assets are reserved for complete distributions to holders of Allowed General Unsecured Claims under Section 5.04.b(i) of the Plan (including sufficient reserves in the Maximum Amount for all General Unsecured Claims that are Disputed at that time). Reorganized TFS will make periodic Pro Rata distributions to holders of Allowed Equity Interests and Allowed Equity Related Claims of all Net Assets converted to Cash, net of any reserves Reorganized TFS believes in good faith are necessary to pay costs associated with converting remaining non-Cash Net Assets into Cash, making such distributions, winding up the affairs of Reorganized TFS, and completing any other task or responsibility reasonably contemplated by the Plan. Once all Net Assets have been converted to Cash, Reorganized TFS will make a final Pro Rata distribution to holders of Allowed Equity Interests and Allowed Equity Related Claims in full and final satisfaction and redemption of all Allowed Equity Interests and Allowed Equity Related Claims.

# V. IMPLEMENTATION OF THE PLAN

## A. Plan Funding

### 1. *Effective Date Payments.*

Funds needed to make Cash payments on the Effective Date on account of Allowed Administrative Claims, Allowed Priority Tax Claims, Allowed Priority Claims, Allowed Miscellaneous Secured Claims, and Allowed Secured Tax Claims under the Plan will come from the Gross Assets, which constitutes the entirety of Reorganized TFS's assets on the Effective Date. The assets remaining after payment of all Allowed Administrative Claims, Allowed Priority Tax Claims, Allowed Priority Claims, Allowed Miscellaneous Secured Claims, and Allowed Secured Tax Claims under the Plan will constitute the Net Assets.

### 2. *Net Assets*

Funds needed to make Cash distributions on and after the Effective Date on account of Allowed General Unsecured Claims, Allowed Equity Interests, and Allowed Equity Related Claims will come from the Net Assets. From and after the Effective Date, Reorganized TFS must use all reasonable efforts to liquidate or otherwise convert all non-Cash Net Assets into Cash. No partial, full, periodic, or final distribution to any holder of any Claim or Equity Interest under the Plan will be made in any form other than Cash.

### 3. *Disputed Claims*

Reorganized TFS must manage distributions from the Net Assets so as to reserve sufficient Cash to make appropriate distribution under the Plan on account of any Disputed Claim that would have been entitled to distribution from the Net Assets if that Disputed Claim were an Allowed Claim on the Effective Date in the Maximum Amount. If and when any Disputed Claim becomes an Allowed Claim, Cash sufficient to make appropriate distribution under the Plan on account of that Claim will be made from the reserved Cash. If a Disputed Claim becomes a Disallowed Claim, all Cash reserved for possible distribution under the Plan on account of that Claim will become available for distribution to Allowed Equity Interests and Allowed Equity Related Claims under Section 5.05.b of the Plan.

## B. Private Company Status

On the Effective Date, (a) Reorganized TFS will maintain no registration under the Exchange Act and will file no reports with the SEC or otherwise be subject to the reporting requirements under the Exchange Act, and (b) Reorganized TFS's shares will not be traded on any recognized stock exchange or over-the-counter securities market.

## C. Certificate of Incorporation and Bylaws

As of the Effective Date and without any further action by the shareholders or directors of the Debtors or Reorganized TFS, TFS's certificate of incorporation and by-laws will be amended and restated substantially in the forms of the Reorganized Certificate and the Reorganized By-Laws. The Reorganized Certificate and the Reorganized By-Laws will prohibit

(to the extent required by Bankruptcy Code § 1123(a) and (b)) the issuance of non-voting equity securities. After the Effective Date, Reorganized TFS may amend its certificate of incorporation and by-laws as permitted by applicable law.

## D.     Directors and Officers of Reorganized TFS

The initial board of directors of Reorganized TFS as of the Effective Date will consist of one director—Carl Young. The initial officers of Reorganized TFS as of the Effective Date will consist of: (i) Carl Young—President; and (ii) Sid Harris—Secretary. Reorganized TFS will provide all its directors and officers with indemnification rights and a D&O Policy, and will compensate its directors and officers, in accordance with practices customary for entities of its type. Reorganized TFS will assume any pre-Petition Date indemnification obligations to any directors and officers employed with a Debtor as of the Petition Date and continuing in office as of and after the Effective Date.

# VI. EXECUTORY CONTRACTS AND UNEXPIRED LEASES

## A.     Assumption and Rejection of Contracts and Leases

All executory contracts and unexpired leases set forth on the schedule of assumed executory contracts and unexpired leases filed with the Bankruptcy Court as part of Exhibit D to the Plan will be deemed assumed by Reorganized TFS or assumed and assigned (as indicated on Exhibit D to the Plan) as of the Effective Date, except for any executory contract or unexpired lease: (i) that has been rejected in accordance with a Final Order entered before the Confirmation Date; or (ii) as to which a motion to reject has been filed with the Bankruptcy Court before the Confirmation Date.

All executory contracts and unexpired leases either (i) set forth on the schedule of rejected executory contracts and unexpired leases filed with the Bankruptcy Court as part of Exhibit D to the Plan or (ii) existing but not listed on Exhibit D to the Plan will be deemed rejected as of the Effective Date, except for any executory contract or unexpired lease that has been assumed or rejected in accordance with a Final Order entered on or before the Confirmation Date.

Entry of the Confirmation Order constitutes: (a) the approval under Bankruptcy Code § 365 of the assumption or assumption and assignment of the executory contracts and unexpired leases assumed or assumed and assigned under the Plan or otherwise during the Chapter 11 Cases; and (b) the approval under Bankruptcy Code § 365 of the rejection of the executory contracts and unexpired leases rejected under the Plan or otherwise during the Chapter 11 Cases. Notwithstanding anything contained in Section 7.02 of the Plan to the contrary, the Debtors retain the right to add or change the treatment (assumed or rejected) of any executory contract or unexpired lease on Exhibit D to the Plan, thus changing the treatment of the contract or lease under this Plan, at any time within 30 days after the Effective Date.

## B.     Cure of Defaults

On the Effective Date or as soon after that date as practicable, Reorganized TFS will Cure any defaults under any executory contract or unexpired lease assumed or assumed and

assigned under this Plan in accordance with Bankruptcy Code § 365(b)(1). Reorganized TFS will not, and need not as a condition to assuming or assuming and assigning any executory contract or unexpired lease under the Plan, Cure any default relating to a Debtor's failure to perform a nonmonetary obligation under any executory contract or unexpired lease.

## C. Rejection Damages Bar Date.

All Rejection Claims arising from the rejection of any executory contract or unexpired lease under the Plan are required to be filed with the Bankruptcy Court no later than the Rejection Claims Bar Date. Any such Claim not filed within that time will be forever barred. With respect to any executory contract or unexpired lease rejected by a Debtor before the Confirmation Date, the deadline for filing a Rejection Claim remains the deadline set forth in the order of the Bankruptcy Court authorizing that rejection. If such an order did not contain such a deadline, the deadline for filing a Rejection Claim arising from that rejection is the Rejection Claims Bar Date.

## D. Indemnification Obligations

Any obligation of a Debtor to indemnify any Person serving as a fiduciary of any employee benefit plan or employee benefit program of a Debtor, under charter, by-laws, contract, or applicable state law is deemed to be an executory contract and rejected by Reorganized TFS as of the Confirmation Date (but subject to the occurrence of the Effective Date). Any obligation of a Debtor to indemnify, reimburse, or limit the liability of any Person, including but not limited to any officer or director of a Debtor, or any agent, professional, financial advisor, or underwriter of any securities issued by a Debtor related to any acts or omissions occurring before the Petition Date is rejected, canceled, and discharged under this Plan as of the Confirmation Date (but subject to the occurrence of the Effective Date), and any Claims resulting from such obligations are Disallowed under Bankruptcy Code § 502(e). Notwithstanding any of the foregoing, nothing contained in the Plan affects, impairs, or prejudices the rights of any Person covered by any applicable D&O Policy with respect to any such policy. Moreover, Reorganized TFS will maintain in force for three years following the Effective Date appropriate D&O Policies covering pre-Effective Date directors and officers of a Debtor and containing substantially the same provisions and limits of coverage as the policies that were in force on the Petition Date. Reorganized TFS will be responsible for paying the deductible or retention amounts under the D&O Policies for that three-year period.

## E. Benefit Plans.

### 1. *Generally*

On the Effective Date, all Benefit Plans will be either assumed or rejected and terminated as of the Confirmation Date as indicated on Exhibit D to the Plan, if not earlier terminated or assumed by a Debtor before the Confirmation Date. Any such terminations will be completed according to the terms and conditions of each Benefit Plan and effected in conformity with all statutory and regulatory requirements including any applicable notice provisions. Any undistributed, vested benefits of the terminated Benefit Plans will be distributed to the participants as provided by statute, the applicable regulations, and the Benefit Plans' provisions.

2. *Regulatory Approvals*

In order to ensure that the Benefit Plans' terminations comply with the terms of the Benefit Plans, applicable statutes, and regulations, the Debtors will obtain any necessary approvals of the relevant regulatory agencies, such as the Pension Benefit Guaranty Corporation, the IRS, and the U.S. Department of Labor, in respect of such terminations. The Bankruptcy Court will retain jurisdiction to hear and determine any disputes relating to the termination of any Benefit Plans.

3. *Retirees*

If any Claim of a retiree against a Debtor gives a Debtor an indemnification claim under an agreement between a Debtor and any Person, the Debtors will, if necessary or appropriate, assign the indemnification claim to the retiree. Notwithstanding anything in Section 7.06 of the Plan or elsewhere in the Plan to the contrary, Reorganized TFS will continue to honor all obligations of either Debtor owed to any retiree under any Benefit Plan as of the Confirmation Date solely to the extent, and for the duration of the period, the Debtor is contractually or legally obligated to provide those benefits, subject to any rights of the Debtor or Reorganized TFS under applicable law.

## VII. DESCRIPTION OF OTHER PROVISIONS OF THE PLAN

### A.  Substantive Consolidation

The Plan constitutes a motion for substantive consolidation of the liabilities and properties of both Debtors. The Plan requests that entry of the Confirmation Order constitute the Bankruptcy Court's granting of that motion. As a result of the substantive consolidation of the liabilities and properties of both Debtors, as of the Effective Date: (a) the Chapter 11 Cases will be deemed to be consolidated into the Chapter 11 Case of TFS as a single consolidated case; (b) all property of the Estate of each Debtor will be deemed to be property of the Consolidated Estate for purposes of distributions under the Plan; (c) all Claims against each Estate will be deemed to be Claims against the Consolidated Estate, any proof of claim filed either Debtor will be deemed to be a single Claim filed against the Consolidated Estate, and all duplicate proofs of claim for the same Claim filed against either Debtor will be deemed to be expunged; (d) all Intercompany Claims will be deemed Disallowed, discharged and eliminated, and no distributions under the Plan will be made on account of Intercompany Claims; (e) all guarantees by one Debtor of the obligations of the other Debtor or in favor of the other Debtor will be deemed eliminated, and no distributions under the Plan will be made on account of Claims based on such guarantees; and (f) for purposes of determining the availability of the right of setoff under Bankruptcy Code § 553, both Debtors will be treated as one consolidated entity so that, subject to the other provisions of Bankruptcy Code § 553, debts due to one Debtor may be set off against the debts of the other Debtor.

### B.  Vesting of Assets

Except as provided in the Plan, the Confirmation Order, or the Plan Documents, all property of the Consolidated Estate will vest in Reorganized TFS on the Effective Date free and clear of all Liens, Claims, and Equity Interests existing before the Effective Date. From and after

the Effective Date, Reorganized TFS may operate its business and may use, acquire, and dispose of property free of any restrictions of the Bankruptcy Code, including the employment of, and payment to, Professionals except as otherwise provided in this Plan or the Confirmation Order.

## C.    Discharge

Except as provided in the Plan or the Confirmation Order, the rights granted under the Plan and the treatment of Claims and Equity Interests under the Plan are in exchange for and in complete satisfaction, discharge, and release of, all Claims including any interest accrued on General Unsecured Claims from the Petition Date. Except as provided in the Plan or the Confirmation Order, confirmation of the Plan discharges the Debtors and Reorganized TFS from all Claims or other debts that arose before the Confirmation Date, and all debts of the kind specified in Bankruptcy Code §§ 502(g), 502(h) or 502(i), whether or not: (a) a proof of claim based on such debt is filed or deemed filed under Bankruptcy Code § 501; (b) a Claim based on such debt is Allowed under Bankruptcy Code § 502; or (c) the holder of a Claim based on such debt has accepted the Plan. Without limiting the foregoing, the discharge granted under the Plan is granted to the fullest extent allowed under Bankruptcy Code §§ 1141(a), 1141(b), 1141(c), and 1141(d)(1).

## D.    Injunction

Except as provided in the Plan or the Confirmation Order, as of the Confirmation Date, all entities that have held, currently hold, or may hold a Claim or other debt or liability that is unclassified by the Plan or that is classified by Article 4 of the Plan or is subject to a distribution under the Plan, or an Equity Interest or other right of an equity security holder that subject to a distribution under the Plan are permanently enjoined from taking any of the following actions on account of any such Claims, debts, liabilities, Equity Related Claims, or Equity Interests or rights: (a) commencing or continuing in any manner any action or other proceeding against either Debtor or Reorganized TFS (including any officer or director or other Person acting as a representative or otherwise on behalf of either Debtor or Reorganized TFS); (b) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree, or order against either Debtor, Reorganized TFS, or their respective property; (c) creating, perfecting, or enforcing any Lien or encumbrance against either Debtor, Reorganized TFS, or their respective property; (d) asserting a right of setoff, subrogation, or recoupment of any kind against any debt, liability, or obligation due to either Debtor, Reorganized TFS, or their respective property; and (e) commencing or continuing any action, in any manner, in any place, that does not comply with or is inconsistent with the provisions of this Plan or the Bankruptcy Code. Nothing in Section 12.03 of the Plan or elsewhere in the Plan is to be construed or is to have the effect of extinguishing, prohibiting, or otherwise limiting, the right of any holder of a Claim to assert a right to setoff or recoupment arising in connection with that Claim as part of the resolution and treatment of that Claim under the Plan.

## E.    Exculpation

None of the Debtors or any of their respective officers, directors, shareholders, or employees have or will incur any liability to any holder of a Claim or Equity Interest, or any other party in interest, or any of their respective members or former members, agents,

employees, representatives, financial advisors, attorneys, or affiliates, or any of their predecessors, successors, or assigns, for any act or omission in connection with, relating to, or arising out of, the Chapter 11 Cases, the negotiation and pursuit of confirmation of the Plan, the consummation of the Plan, or the administration of the Plan, excluding: (a) all the foregoing entities' acts or omissions constituting gross negligence, bad faith, or willful misconduct, as finally determined by a court of competent jurisdiction; and (b) the obligations of the Debtors and Reorganized TFS under the Plan. All the foregoing entities are entitled to rely reasonably on the advice of counsel with respect to their duties and responsibilities under the Plan or in the context of the Chapter 11 Cases.

## F.    Release

As of the Effective Date, except as set forth in the Plan, each holder of a Claim, whether Allowed or Disallowed at any time, irrevocably releases and forever discharges each of the Debtors and Reorganized TFS, and its successors, assigns, agents, shareholders, directors, officers, employees, attorneys, consultants, advisors, and Affiliates, from all claims, debts, liabilities, demands, offsets, obligations, costs, expenses, actions, and causes of action of every nature and description, known and unknown, relating to, directly or indirectly, the Chapter 11 Cases, the Debtors, or Reorganized TFS that the holder now has or at any time may hold, by reason of any matter, cause, or thing occurred, done, omitted, or suffered to be done before the Effective Date, except claims for amounts due under the Plan.

## G.    Preserved Litigation Claims and Disputed Claims Resolution

Notwithstanding anything to the contrary in the Plan, any non-Debtor party to a Preserved Litigation Claim or a Disputed Claim that has obtained or obtains relief from the automatic stay or from the injunction provisions contained in Section 12.03 of the Plan to pursue resolution of their Claim in a forum other than the Bankruptcy Court will not be deemed to have violated any provision of the Plan by seeking a resolution as to Allowance, Disallowance, or amount of such Claim in such other forum, but the classification and distributions on account of any such Claim, once liquidated and Allowed or Disallowed, remain solely and exclusively subject to the Bankruptcy Court's continuing jurisdiction under Article 13 of the Plan and the terms and conditions of the Plan.

## H.    Preservation of Insurance

The discharge and release from Claims as provided in the Plan, except as necessary to be consistent with the Plan, do not diminish or impair the enforceability of any insurance policy that may cover Claims against a Debtor or any other Person.

## I.    Retention of Jurisdiction After the Effective Date

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court will retain as much jurisdiction over the Chapter 11 Cases after the Effective Date as legally permissible including jurisdiction to:

a.    Allow, disallow, determine, liquidate, classify, estimate, or establish the amount, priority, or secured or unsecured status of any Claim, and resolve

any request for payment of any Administrative Claim and any objection to the Allowance or priority of any Claim;

b.  Grant or deny any applications for allowance of compensation or reimbursement of expenses authorized under the Bankruptcy Code or this Plan;

c.  Resolve any matters related to the assumption, assumption and assignment, or rejection of any executory contract or unexpired lease to which a Debtor is a party and to hear, determine and, if necessary, liquidate any Claims arising from, or Cure related to, assumption or rejection;

d.  Ensure that distributions required under the Plan are accomplished in accordance with this Plan;

e.  Decide or resolve any motions, adversary proceedings, contested matters, and any other matters and grant or deny any applications or motions involving a Debtor that may be pending on the Effective Date;

f.  Enter any necessary or appropriate orders to implement or consummate the Plan's provisions and all contracts, instruments, releases, and other agreements or documents created in connection with the Plan or the Disclosure Statement;

g.  Resolve any cases, controversies, suits, or disputes that may arise in connection with the consummation, interpretation, or enforcement of the Plan, or any Person's obligations incurred in connection with the Plan;

h.  Hear and determine any motion or application to modify the Plan before or after the Effective Date under Bankruptcy Code § 1127 or modify the Disclosure Statement or any contract, instrument, release, or other agreement or document issued, entered into, filed, or delivered in connection with the Plan or the Disclosure Statement; or hear or determine any motion or application to remedy any defect or omission or reconcile any inconsistency in any Bankruptcy Court order, the Plan, the Disclosure Statement, or any contract, instrument, release, or other agreement or document issued, entered into, filed or delivered in connection with the Plan or the Disclosure Statement, in such manner as may be necessary or appropriate to consummate the Plan, to the extent authorized by the Bankruptcy Code;

i.  Issue injunctions, enter and implement other orders, or take any other necessary or appropriate actions to restrain any entity's interference with consummation or enforcement of the Plan;

j.      Enter and implement any necessary or appropriate orders if the Confirmation Order is for any reason modified, stayed, reversed, revoked, or vacated;

k.      Determine any other matters that may arise in connection with or related to the Plan, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release, or other agreement or document issued, entered into, filed, or delivered in connection with the Plan, the Disclosure Statement or the Confirmation Order;

l.      Issue a final decree and enter an order closing the Chapter 11 Cases; and

m.      Adjudicate the Disputed Claims, the Avoidance Actions, and the Preserved Litigation Claims and any other cause of action or claims of a Debtor.

## VIII.  ACCEPTANCE AND CONFIRMATION OF THE PLAN

### A.      Acceptance of the Plan

As a condition to confirmation, the Bankruptcy Code requires that each Class of Impaired Claims and Equity Interests accept the Plan, except under certain circumstances. Bankruptcy Code § 1126(c) defines acceptance of a plan by a class of impaired Claims as acceptance by holders of at least two-thirds in dollar amount and more than one-half in number of Claims in that Class, but for that purpose counts only those who actually vote to accept or to reject the Plan. Under Bankruptcy Code § 1126(d), a Class of Equity Interests has accepted the Plan if holders of such Equity Interests holding at least two-thirds in amount actually voting have voted to accept the Plan. Bankruptcy Code § 1126(f) deems a Class of Claims or Equity Interests to have accepted the Plan without voting if that Class is unimpaired under the definition in Bankruptcy Code § 1124. The Bankruptcy Court has determined that all Classes under the Plan are unimpaired and, therefore, are deemed to accept the Plan. No voting on the Plan is necessary.

### B.      Feasibility of the Plan

To confirm the Plan, the Bankruptcy Court must find that confirmation of the Plan is not likely to be followed by the need for further financial reorganization of the Debtors. This requirement is imposed by Bankruptcy Code § 1129(a)(11) and is referred to as the "feasibility" requirement. The Debtors believe that they will be able to perform timely all obligations described in the Plan and, therefore, that the Plan is feasible.

To demonstrate the feasibility of the Plan, the Debtors refer to the Effective Date Balance Sheet included in **Appendix 2.** This balance sheet demonstrates that the Debtors will have sufficient Cash on hand as of the Effective Date to make, on the Effective Date, all payments to Creditors owing on the Effective Date, and sufficient Cash on hand to satisfy all obligations under the Plan to all Creditors in all Classes. Additionally, the balance sheet indicates that significant value remains for distribution to Allowed Equity Interests and Allowed Equity Related Claims once all Cash distributions to all Creditors are either made or reserved. Accordingly, the Debtors believe that the Plan satisfies the feasibility requirement of Bankruptcy

Code § 1129(a)(11). The Debtors caution that no representations can be made as to the accuracy of the Effective Date Balance Sheet or as to Reorganized TFS's ability to achieve the projected results. Certain of the assumptions on which the Effective Date Balance Sheet are based are subject to uncertainties outside the Debtors' control. Some assumptions inevitably will not materialize, and events and circumstances occurring after the date on which the Effective Date Balance Sheet was prepared may be different from those assumed or may be unanticipated, and may adversely affect the Debtors' financial results. Therefore, the actual results can be expected to vary from the projected results and the variations may be material and adverse.

The Effective Date Balance Sheet was not prepared with a view toward compliance with the guidelines established by the American Institute of Certified Public Accountants, the practices recognized to be in accordance with generally accepted accounting principles, or the rules and regulations of the Securities and Exchange Commission regarding projections. Furthermore, the Effective Date Balance Sheet has not been audited by the Debtors' independent accountants. Although presented with numerical specificity, the Effective Date Balance Sheet is based on a variety of assumptions, some of which in the past have not been achieved and which may not be realized in the future, and are subject to significant business, economic and competitive uncertainties and contingencies, and many of which are beyond the Debtors' control. Consequently, the Effective Date Balance Sheet should not be regarded as a representation or warranty by the Debtors or any other Person, that projections will be realized. Actual results may vary materially from those presented.

## C. Best Interests Test

### 1. *Explanation*

Even if a plan is accepted by each class of holders of claims, the Bankruptcy Code requires a bankruptcy court to determine that the plan is in the "best interests" of all holders of claims and interests that are impaired by the plan and that have not accepted the plan. The "best interests" test, as set forth in Bankruptcy Code § 1129(a)(7), requires a bankruptcy court to find either that: (i) all members of an impaired class of claims or interests have accepted the plan; or (ii) the plan will provide a member who has not accepted the plan with a recovery of property of a value, as of the effective date of the plan, that is not less than the amount that such holder would recover if the debtor was liquidated under Chapter 7 of the Bankruptcy Code.

To calculate the probable distribution to members of each impaired class of holders of claims and interests if the debtor were liquidated under Chapter 7, a bankruptcy court must first determine the aggregate dollar amount that would be generated from the debtor's assets if its Chapter 11 case were converted to a Chapter 7 case under the Bankruptcy Code. This "liquidation value" would consist primarily of the proceeds from a forced sale of the debtor's assets by a Chapter 7 trustee.

The amount of liquidation value available to unsecured creditors would be reduced by: (1) first, the claims of any secured creditors to the extent of the value of their collateral, including the value of goods delivered on consignment to the extent the consignment vendor properly perfected its rights in such goods in accordance with applicable law; and (2) second, by the costs and expenses of liquidation, as well as by other administrative expenses and costs of

both the Chapter 7 case and the Chapter 11 case. As a general matter, a liquidation under Chapter 7 will not affect the rights of letter of credit beneficiaries, including certain sureties who posted bonds that the Debtors purchased for various business, litigation, and other reasons. Costs of liquidation under Chapter 7 of the Bankruptcy Code would include the compensation of a trustee, as well as of counsel and other professionals retained by the trustee, asset disposition expenses, all unpaid expenses incurred by the debtor in its bankruptcy case (such as compensation of attorneys, financial advisors, and restructuring consultants) that are allowed in the Chapter 7 case, litigation costs, and claims arising from the operations of the debtor during the pendency of the bankruptcy case. The liquidation itself would trigger certain priority payments that otherwise would be due in the ordinary course of business. Those priority claims would be paid in full from the liquidation proceeds before the balance would be made available to pay general unsecured claims or to make any distribution in respect of equity interests. The liquidation also would prompt the rejection of a large number of executory contracts and unexpired leases and thereby create a significantly higher number of unsecured claims.

Once the court ascertains the recoveries in liquidation of secured creditors and priority claimants, it must determine the probable distribution to general unsecured creditors and equity security holders from the remaining available proceeds in liquidation. If the probable distribution has a value greater than the distributions to be received by such creditors and equity security holders under a debtor's plan, then the plan is not in the best interests of creditors and equity security holders.

2. *Application to the Liquidation Analysis*

A liquidation analysis prepared with respect to the Debtors is attached as **Appendix 3** to this Disclosure Statement. The Debtors believe that any liquidation analysis is speculative. For example, the liquidation analysis necessarily contains an estimate of the amount of Claims that will ultimately become Allowed Claims. In preparing the liquidation analysis, the Debtors have projected the amount of Allowed Claims based upon a review of their scheduled and filed proofs of claim. No order or finding has been entered by the Bankruptcy Court estimating or otherwise fixing the amount of Claims at the projected amounts of Allowed Claims set forth in the liquidation analysis. In preparing the liquidation analysis, the Debtors have projected a range for the amount of Allowed Claims with the low end of the range the lowest reasonable amount of Claims and the high end of the range the highest reasonable amount of the Claims, thus allowing assessment of the most likely range of Chapter 7 liquidation dividends to the holders of the Allowed Claims. The estimate of the amount of Allowed Claims set forth in the liquidation analysis should not be relied on for any other purpose, including, without limitation, any determination of the value of any distribution to be made on account of Allowed Claims and Allowed Interests under the Plan.

Notwithstanding the difficulties in quantifying recoveries to creditors with precision, the Debtors believe that, taking into account the liquidation analysis, the Plan meets the "best interests" test of Bankruptcy Code § 1129(a)(7). The Debtors believe that each members of each Class will receive at least as much under the Plan as it would in a liquidation in a hypothetical Chapter 7 case. Creditors will receive a better recovery through the distributions contemplated by the Plan because the orderly wind-down and liquidation of the Debtors under the Plan rather than a forced liquidation will allow the realization of more value for the Debtors' assets, owing

principally to the increased costs attending a Chapter 7 liquidation, including statutory Chapter 7 trustee fees and trustee's counsel fees, to name only a few additional expenses not present under the Plan.

## IX.  CERTAIN FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN

### A.    Introduction

A summary description of certain United States federal income tax consequences of the Plan follows. This description is for informational purposes only and, owing to a lack of definitive judicial or administrative authority or interpretation, substantial uncertainties exist with respect to various tax consequences of the Plan discussed below. This disclosure describes only the principal United States federal income tax consequences of the Plan to the Debtors and to holders of Claims and Equity Interests. No opinion of counsel has been sought or obtained with respect to any tax consequences of the Plan. No rulings or determinations of the IRS or any other tax authorities have been sought or obtained with respect to any tax consequences of the Plan, and the discussion below is not binding on the IRS or other authorities. No representations are being made to the Debtors or any holder of a Claim or Equity Interest regarding the particular tax consequences of the confirmation and consummation of the Plan. No assurance can be given that the IRS would not assert, or that a court would not sustain, a different position from any discussed here.

The following discussion of United States federal income tax consequences is based on the Internal Revenue Code of 1986, as amended, Treasury Regulations, judicial authorities, published positions of the IRS and other applicable authorities, all as in effect on the date of this document and all of which are subject to change or differing interpretations (possibly with retroactive effect).

The following discussion does not address foreign, state, or local tax consequences of the Plan, nor does it purport to address the United States federal income tax consequences of the Plan to special classes of taxpayers (*e.g.,* banks and certain other financial institutions, insurance companies, tax-exempt organizations, governmental entities, persons that are, or hold their Claims through, pass-through entities, persons whose functional currency is not the United States dollar, foreign persons, dealers in securities or foreign currency, employees of a Debtor, persons who received their Claims by exercising an employee stock option or otherwise as compensation, and persons holding Claims that are a hedge against, or that are hedged against, currency risk or that are part of a straddle, constructive sale, or conversion transaction). Furthermore, the following discussion does not address United States federal taxes other than income taxes.

Holders of Claims and Equity Interests are strongly urged to consult their own tax advisor regarding the United States federal, state, local, and foreign tax consequences of the transactions described in this Disclosure Statement and in the Plan.

### B.    United States Federal Income Tax Consequences to the Debtors

Under the Plan, the Debtors' outstanding indebtedness will be satisfied in exchange for Cash. The satisfaction of a debt obligation for an amount of cash less than the "adjusted issue

price" of the debt obligation generally gives rise to cancellation of indebtedness ("*COD*") income to the debtor.

The debtor does not, however, recognize COD income if the debt discharge occurs in a Title 11 bankruptcy case. Instead, the debtor reduces its tax attributes to the extent of its COD income in the following order: (a) net operating losses ("*NOLs*") and NOL carryforwards; (b) general business credit carryforwards; (c) minimum tax credit carryforwards; (d) capital loss carryforwards; (e) the tax basis of the Debtors' depreciable and nondepreciable assets (but not below the amount of its liabilities immediately after the discharge); and (f) foreign tax credit carryforwards.

A debtor may elect to alter the preceding order of attribute reduction and, instead, first reduce the tax basis of its depreciable assets. Because the Debtors are part of a group of corporations that joins in the filing of a consolidated federal income tax return, both the tax attributes of the consolidated group that are attributable to other group members and the separate attributes of these other members are subject to reduction to the extent that a given Debtor member of the group has COD income that exceeds the amount of (i) the consolidated group's tax attributes that are attributable to the given Debtor member, (ii) the attributes that arose in separate return limitation years of the given Debtor member, and (iii) the basis of property of the given Debtor member. The reduction in tax attributes occurs only after the tax for the year of the debt discharge has been determined (*i.e.,* such attributes may be available to offset taxable income that accrues between the date of discharge and the end of the Debtors' tax year). The Debtors do not recognize any COD income that exceeds the amount of available tax attributes, and such excess COD income has no other United States federal income tax effect.

As noted above, the Debtors are members of an affiliated group of corporations that join in the filing of a consolidated federal income tax return. The Debtor members of this consolidated group will cancel all inter-company debt between them as part of the Plan. Under Treasury Regulation § 1.1502-13(g), a Debtor of such canceled inter-company debt will recognize the COD income realized on the cancellation. The creditor of the inter-company debt would have an offsetting bad debt deduction that would equal the COD income recognized by the debtor member and that would be treated as being of the same character of the COD income. Thus, on a consolidated basis, the group will recognize no net income or loss from the cancellation of the inter-company debt under the Plan.

Because the Debtors' outstanding indebtedness will be satisfied in exchange for Cash in full plus interest from the Petition Date, the amount of COD income, and accordingly the amount of tax attributes required to be reduced, should be insignificant at most. Accordingly, it is not expected that the Debtors will be required to reduce their tax attributes materially. To the extent permitted for federal income tax purposes, the Debtors intend to deduct the respective amounts they pay in Cash and under the Plan.

## C.     Federal Income Tax Consequences to Creditors

The following discusses certain United States federal income tax consequences of the transactions contemplated by the Plan to Creditors that are "United States holders," as defined below. The United States federal income tax consequences of the transactions contemplated by

Case 2:05-bk-17104-RTB    Doc 126    Filed 01/06/06    Entered 01/06/06 12:22:43    Desc
Main Document      Page 31 of 76

the Plan to Creditors (including the character, timing and amount of income, gain or loss recognized) will depend on, among other things: (1) whether the Claim and the consideration received in respect of it are "securities" for federal income tax purposes; (2) the manner in which a Creditor acquired a Claim; (3) the length of time the Claim has been held; (4) whether the Claim was acquired at a discount; (5) whether the Creditor has taken a bad debt deduction with respect to the Claim (or any portion of it) in the current tax year or any prior tax year; (6) whether the Creditor has previously included in its taxable income accrued but unpaid interest with respect to the Claim; (7) the holder's method of tax accounting; and (8) whether the Claim is an installment obligation for federal income tax purposes. Creditors, therefore, should consult their own tax advisors regarding the particular tax consequences to them of the transactions contemplated by the Plan.

For purposes of the following discussion, a "United States holder" is a Creditor that is: (1) a citizen or individual resident of the United States; (2) a partnership or corporation created or organized in the United States or under the laws of the United States, a political subdivision of the United States, or a State of the United States; (3) an estate whose income is subject to United States federal income taxation regardless of its source; or (4) a trust if (i) a court within the United States is able to exercise primary supervision over the administration of the trust and one or more United States fiduciaries have the authority to control all substantial decisions of the trust, or (ii) the trust was in existence on August 20, 1996, and properly elected to be treated as a United States person.

1.      *Sale or Exchange of Claims*

Under the Plan, Creditors will receive Cash in exchange for their Claims. A Creditor who receives Cash in exchange for its Claim under the Plan will generally recognize gain or loss for United States federal income tax purposes in an amount equal to the difference between the amount of Cash received and the Creditor's adjusted tax basis in its Claim. The character of the gain or loss as capital gain or loss or as ordinary income or loss will be determined by a number of factors, including the nature of the Claim as held by the Creditor, whether the Claim constitutes a capital asset in the hands of the Creditor, whether the Claim was purchased at a discount, whether any amount received in respect of a Claim constitutes accrued interest, and whether and to what extent the Creditor has previously claimed a bad debt deduction with respect to its Claim. A Creditor who recognizes a loss on a transaction conducted under the Plan may be entitled to a bad debt deduction, either in the taxable year of the Effective Date or a prior taxable year.

2.      *Accrued Interest*

Under the Plan, Cash may be distributed or deemed distributed to certain Creditors with respect to their Claims for accrued interest. Holders of Claims for accrued interest that previously have not included such accrued interest in taxable income will be required to recognize ordinary income equal to the amount of Cash received with respect to such Claims for accrued interest. Holders of Claims for accrued interest that have included such accrued interest in taxable income generally may take an ordinary deduction to the extent that such Claim is not fully satisfied under the Plan (after allocating the distribution between principal and accrued interest), even if the underlying Claim is held as a capital asset. The adjusted tax basis of any

Case 2:05-bk-17104-RTB    Doc 126    Filed 01/06/06    Entered 01/06/06 12:22:43    Desc
                     Main Document       Page 32 of 76

Cash received in exchange for a Claim for accrued interest will equal the amount of Cash on the Effective Date, and the holding period for the property will begin on the day after the Effective Date. It is not clear the extent to which consideration that may be distributed under the Plan will be allocable to interest. Creditors are advised to consult their own tax advisors to determine the amount, if any, of consideration received under the Plan that is allocable to interest.

3. *Market Discount*

In general, a debt obligation, other than one with a fixed maturity of one year or less, that is acquired by a holder in the secondary market (or, in certain circumstances, on original issuance) is a "market discount bond" as to that holder if the obligation's stated redemption price at maturity (or, in the case of a debt obligation having original issue discount, the revised issue price) exceeds the holder's adjusted tax basis in the debt obligation immediately after its acquisition. However, a debt obligation will not be a "market discount bond" if such excess is less than a statutory de minimis amount. To the extent that a Creditor has not previously included market discount in its taxable income, gain recognized by a Creditor with respect to a "market discount bond" will generally be treated as ordinary interest income to the extent of the market discount accrued on such bond during the Creditor's period of ownership. A holder of a market discount bond that is required to defer deduction of all or a portion of the interest on indebtedness incurred or maintained to acquire or carry the bond may be allowed to deduct such interest, in whole or in part, on the disposition of such bond.

4. *Other Claimholders*

If a Creditor reaches an agreement with the Debtors to have its Claim satisfied, settled, released, exchanged, or otherwise discharged in a manner other than as described in the Plan, that Creditor should consult with its own tax advisors regarding the tax consequences of that satisfaction, settlement, release, exchange, or discharge.

5. *Information Reporting and Backup Withholding*

Certain payments, including payments in respect of accrued interest or market discount, are generally subject to information reporting by the payor to the IRS. These reportable payments do not include those that give rise to gain or loss on the exchange of a Claim. Moreover, such reportable payments are subject to backup withholding under certain circumstances. A United States holder may be subject to backup withholding at rate of 28% with respect to certain distributions or payments of accrued interest, market discount, or similar items pursuant to the Plan, unless the holder (a) comes within certain exempt categories (which generally include corporations) and, when required, demonstrates this fact or (b) provides a correct United States taxpayer identification number and certifies under penalty of perjury that the holder is a U.S. person, the taxpayer identification number is correct, and that the holder is not subject to backup withholding because of a failure to report all dividend and interest income. Payments that give rise to gain or loss on the exchange of a Claim are not subject to backup withholding.

Backup withholding is not an additional tax. Amounts subject to backup withholding are credited against a holder's United States federal income tax liability, and a holder may obtain a refund of any excess backup withholding by filing an appropriate claim for refund with the IRS.

**D.  Federal income Tax Consequences to Holders of Equity Interests**

Because the Plan contemplates that holders of Equity Interests will retain their Equity Interests under the Plan, the Plan itself will result in no United States federal income tax consequence to a holder of common stock in TFS or any other holder of an Equity Interest, because no Cash, securities, or other property will be transferred to those holders under the Plan. The Plan does contemplate, however, that some time after the Effective Date, Reorganized TFS will redeem Equity Interests with a final distribution of Cash to all holders of Equity Interests. An Equity Interest holder who receives Cash in redemption of its shares will generally recognize gain or loss for United States federal income tax purposes in an amount equal to the difference between the amount of Cash received and the holder's adjusted tax basis in its shares. The character of the gain or loss as capital gain or loss or as ordinary income or loss will be determined by a number of factors, including whether the Equity Interest constitutes a capital asset in the hands of the holder.

**E.  Importance of Obtaining Professional Tax Assistance**

The foregoing discussion is intended only as a summary of certain United States federal income tax consequences of the Plan and is not a substitute for careful tax planning with a tax professional. The above discussion is for informational purposes only and is not tax advice. The tax consequences are in many cases uncertain and may vary depending on a Creditor's particular circumstances. Accordingly, Creditors are strongly urged to consult their tax advisors about the United States federal, state and local and applicable foreign income and other tax consequences of the Plan, including with respect to tax reporting and record keeping requirements.

*IRS Circular 230 Notice:*  To comply with U.S. treasury regulations, be advised that any U.S. federal tax advice included in this communication (and it is not intended that any such advice be given in this Disclosure Statement) is not intended or written to be used, and cannot be used, to avoid any U.S. federal tax penalties or to promote, market, or recommend to another party any transaction or matter.

## X.  RISK FACTORS

**A.  Generally**

The restructuring of the Debtors involves a degree of risk, and this Disclosure Statement and certain of its Exhibits contain forward-looking statements that involve risks and uncertainty. Reorganized TFS's actual results could differ materially from those anticipated in such forward-looking statements as a result of a variety of factors, including those set forth in the following risk factors and elsewhere in this Disclosure Statement. **Holders of Claims and Equity Interests should consider carefully the following factors in addition to the other information contained in this Disclosure Statement.**

**B.      Dependence on Key Personnel**

Reorganized TFS's post-Effective Date operations, limited to the liquidation of non-Cash assets and distribution of Cash to holders of Allowed Claims and Allowed Equity Interests, depend to a great extent on the efforts of its officers and other key personnel. There can be no assurance that Reorganized TFS will be successful in attracting and retaining such personnel, or that it will not incur increased costs in order to do so. Reorganized TFS's failure to attract additional qualified employees or to retain the services of key personnel could have a material adverse effect on Reorganized TFS's business, financial condition, and results of operations.

**C.      Reorganization Factors**

1.      *Financial Considerations*

As with any plan of reorganization or other financial transaction, there are certain risk factors that must be considered. All risk factors cannot be anticipated, some events will develop in ways that were not foreseen, and many or all of the assumptions that have been used in connection with this Disclosure Statement and the Plan will not be realized exactly as assumed. Some or all of such variations may be material. While efforts have been made to be reasonable in this regard, there can be no assurance that subsequent events will bear out the analyses set forth in this Disclosure Statement. Holders of Claims and Equity Interests should be aware of some of the principal risks associated with the contemplated reorganization:

a.      There is a risk that one of more of the required conditions or obligations under the Plan will not occur, be satisfied or waived, as the case may be, resulting in the inability to confirm the Plan.

b.      The total amount of all Claims filed in the Chapter 11 Cases may materially exceed the estimated amounts of Allowed Claims assumed in the development of the Plan, in the valuation estimates provided above. The actual amount of all Allowed Claims in any Class may differ significantly from the estimates provided in this Disclosure Statement. Accordingly, the amount and timing of the distributions that will ultimately be received by any particular holder of an Allowed Claim in any Class may be materially and adversely affected if the estimates are exceeded as to any Class.

c.      Uncertainties may adversely affect Reorganized TFS's future operations including acts of God or similar circumstances. Many of these factors will be substantially beyond Reorganized TFS's control, and a change in any factor or combination of factors could have a material adverse effect on Reorganized TFS's financial condition, cash flows, and results of operations.

2.      *Risk of Non-Confirmation of the Plan*

Although the Debtors believe that the Plan will satisfy all requirements necessary for Confirmation by the Bankruptcy Court, there can be no assurance that the Bankruptcy Court will

reach the same conclusion. There can also be no assurance that modifications of the Plan will not be required for Confirmation, that such negotiations would not adversely affect the holders of Allowed Claims and Equity Interests, or that such modifications would not necessitate solicitation or re-solicitation of votes.

# XI. ALTERNATIVES TO THE PLAN

The Debtors believe that the Plan affords holders of Claims and Equity Interests the greatest realization on the Debtors' assets and, therefore, is in the best interests of those holders. If the Plan is not confirmed, however, the theoretical alternatives include: (a) continuation of the pending Chapter 11 Cases; (b) an alternative plan or plans of reorganization; or (c) liquidation of the Debtors under Chapter 7 of the Bankruptcy Code.

## A.    Continuation of the Chapter 11 Cases

Because the Debtors' operations, conducted previously through subsidiaries, have now been entirely divested, continuing the Chapter 11 Cases would only increase the amount of Administrative Claims against the Estates. Since the Plan contemplates the winding up of the Debtors' affairs and the distribution of assets to holders of Claims and Equity Interests, continuing the Chapter 11 Cases would serve no rational purpose.

## B.    Alternative Plans of Reorganization

If the Plan is not confirmed, the Debtors, or, after the expiration of the Debtors' exclusive period in which to propose and solicit a reorganization plan, any other party in interest in the Chapter 11 Cases, could propose a different plan or plans. Those plans might involve either a reorganization and continuation of the Debtors' businesses, or some other form of orderly liquidation of the Debtors' assets, or a combination of both.

## C.    Liquidation Under Chapter 7

If no plan is confirmed, the Debtors' Chapter 11 Cases may be converted to a case under Chapter 7 of the Bankruptcy Code. In a Chapter 7 case, a trustee or trustees would be appointed to liquidate the assets of the Debtors. It is impossible to predict precisely how the proceeds of the liquidation would be distributed to the respective holders of Claims against or Equity Interests in the Debtors. The Debtors believe, however, that holders of Claims and Equity Interests would lose substantial value if the Debtors were forced to liquidate under Chapter 7 because additional administrative expenses involved in the appointment of a trustee or trustees and attorneys, accountants and other professionals to assist those trustees would cause a substantial diminution in the value of the Estates. The assets available for distribution to Creditors and Equity Interest holders would be reduced by those additional expenses.

# XII. CONCLUSION

## A.    Hearing on and Objections to Confirmation

### 1.    *Confirmation Hearing*

The hearing on confirmation of the Plan has been scheduled for _____, 2006 at ___:___ __.m. (Arizona time). The hearing may be adjourned from time to time by announcing the adjournment in open court, all without further notice to parties in interest, and the Plan may be modified by the Debtors under Bankruptcy Code § 1127 before, during, or as a result of that hearing, without further notice to parties in interest.

### 2.    *Deadline for Objections to Confirmation*

The time by which any objections to confirmation of the Plan must be filed with the Bankruptcy Court and received by the parties listed in the Confirmation Hearing Notice has been set for _____, 2006 at 5:00 p.m. (Arizona time).

## B.    Recommendation

The Plan provides for an equitable, early, and full distribution to Creditors and preserves significant value for holders of Equity Interests. The Debtors believe that any alternative to confirmation of the Plan, such as Chapter 7 liquidation or attempts by another party in interest to file a plan, could result in significant delays, litigation, and costs. **For these reasons, the Debtors urge you to support Confirmation of the Plan**.

Dated: January 6, 2006                    Respectfully submitted,


**SQUIRE, SANDERS & DEMPSEY L.L.P.**    **THREE-FIVE SYSTEMS, INC.,** on behalf
                                        of itself and TFS-DI, Inc., both Debtors and
By:  ___*/s/ Jordan A. Kroop*___        Debtors-In-Possession
        Thomas J. Salerno
        Jordan A. Kroop                  By:  ___*/s/ Carl Young*_____
Two Renaissance Square, Suite 2700              Carl Young
40 North Central Avenue                         Chief Restructuring Officer
Phoenix, Arizona 85004


Counsel for Debtors

# APPENDIX 1

## JOINT PLAN OF REORGANIZATION

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF ARIZONA**

| | |
|---|---|
| In re | Chapter 11 |
| THREE-FIVE SYSTEMS, INC., | Case No. 05-bk-17104-RTB |
| Debtor. | |
| In re | Chapter 11 |
| TFS-DI, INC., | Case No. 05-bk-18689-RTB |
| Debtor. | |

# JOINT PLAN OF REORGANIZATION

Thomas J. Salerno
Jordan A. Kroop
**SQUIRE, SANDERS & DEMPSEY L.L.P.**
Two Renaissance Square, Suite 2700
40 North Central Avenue
Phoenix, Arizona 85004
(602) 528-4000

Counsel to Debtors

Dated:  January 6, 2006

# TABLE OF CONTENTS

INTRODUCTION .................................................................................................................... 1
ARTICLE 1.    DEFINITIONS AND RULES OF INTERPRETATION ................................... 2
ARTICLE 2.    SUBSTANTIVE CONSOLIDATION OF ESTATES ................................... 8
2.01.    Request for Substantive Consolidation. .................................................... 8
2.02.    Effect of Substantive Consolidation. ....................................................... 8
2.03.    No Impact On Secured Claims. ................................................................ 8
2.04.    Effect On Corporate Structure. ............................................................... 8
ARTICLE 3.    TREATMENT OF UNCLASSIFIED CLAIMS .......................................... 9
3.01.    Unclassified Claims. ................................................................................ 9
3.02.    Allowed Administrative Claims. ............................................................. 9
3.03.    Preserved Ordinary Course Administrative Claims. ................................ 9
3.04.    Allowed Priority Tax Claims. .................................................................. 9
3.05.    Professional Fee Claims. ......................................................................... 9
3.06.    Post-Confirmation Date Professional Fees. ........................................... 10
ARTICLE 4.    CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS ............... 10
4.01.    Summary of Classification. .................................................................... 10
4.02.    Specific Classification. .......................................................................... 10
ARTICLE 5.    TREATMENT OF CLAIMS AND EQUITY INTERESTS ...................... 11
5.01.    Class 1—Priority Claims. ...................................................................... 11
5.02.    Class 2—Secured Tax Claims. ............................................................... 11
5.03.    Class 3—Miscellaneous Secured Claims. .............................................. 11
5.04.    Class 4—General Unsecured Claims. ..................................................... 12
5.05.    Class 5—Equity Interests and Equity Related Claims. .......................... 12
ARTICLE 6.    IMPLEMENTATION ............................................................................... 13
6.01.    Plan Funding. ......................................................................................... 13
6.02.    Certificate of Incorporation and By-Laws. ............................................ 13
6.03.    Purpose of Reorganized TFS. ................................................................ 13
6.04.    Private Company Status. ........................................................................ 13
6.05.    Cancellation of Instruments and Agreements. ....................................... 14
6.06.    Effectiveness of Instruments and Agreements. ...................................... 14
6.07.    No Corporate Action Required ............................................................... 14
6.08.    Directors and Officers. ........................................................................... 14
6.09.    Operation Pending Effective Date .......................................................... 14
ARTICLE 7.    EXECUTORY CONTRACTS AND UNEXPIRED LEASES ................... 14
7.01.    Assumption or Rejection of Executory Contracts and Unexpired Leases.... 14
7.02.    Approval of Assumption or Rejection. ................................................... 15
7.03.    Cure of Defaults. ................................................................................... 15
7.04.    Rejection Claims Bar Date. .................................................................... 15
7.05.    Indemnification Obligations. .................................................................. 15
7.06.    Benefit Plans. ......................................................................................... 15
ARTICLE 8.    CONFIRMATION WITHOUT ACCEPTANCE FROM ALL IMPAIRED CLASSES ............ 16
8.01.    No Impaired Classes. ............................................................................. 16
8.02.    Use of § 1129(b). .................................................................................. 16
ARTICLE 9.    DETERMINATION OF CLAIMS ............................................................ 16
9.01.    Objections to Claims. ............................................................................. 16
9.02.    Distributions on Allowance or Disallowance of Disputed Claims. ......... 16
9.03.    Contingent Claims. ................................................................................ 17
ARTICLE 10.    AVOIDANCE ACTIONS, PRESERVED LITIGATION CLAIMS ........... 17
10.01.    Retention and Reservation. ..................................................................... 17
10.02.    Prosecution. ............................................................................................ 17
ARTICLE 11.    CONDITIONS PRECEDENT ................................................................... 17
11.01.    Conditions to Confirmation. ................................................................... 17
11.02.    Conditions to Effectiveness. ................................................................... 18
11.03.    Waiver of Conditions. ............................................................................ 18
ARTICLE 12.    TITLE TO PROPERTY; THIRD PARTY RIGHTS AND RELEASES ..... 18
12.01.    Vesting of Assets. .................................................................................. 18
12.02.    Discharge. ............................................................................................... 18
12.03.    Injunction. .............................................................................................. 19

| | | |
|---|---|---|
| 12.04. | Exculpation. | 19 |
| 12.05. | Release. | 19 |
| 12.06. | Preserved Litigation Claims and Disputed Claims Resolution. | 19 |
| 12.07. | Preservation of Insurance. | 20 |
| ARTICLE 13. | RETENTION OF JURISDICTION | 20 |
| 13.01. | Jurisdiction. | 20 |
| ARTICLE 14. | AMENDMENT AND WITHDRAWAL OF PLAN | 21 |
| 14.01. | Amendment of Plan. | 21 |
| 14.02. | Revocation or Withdrawal of Plan. | 21 |
| ARTICLE 15. | MISCELLANEOUS | 21 |
| 15.01. | Effecting Documents; Further Transactions; Timing. | 21 |
| 15.02. | Exemption From Transfer Taxes. | 21 |
| 15.03. | Binding Effect. | 22 |
| 15.04. | Governing Law. | 22 |
| 15.05. | Modification of Treatment of Claims. | 22 |
| 15.06. | Setoffs and Recoupment. | 22 |
| 15.07. | Notices. | 22 |
| 15.08. | Delivery of Notices. | 23 |
| 15.09. | Termination of Statutory Committees. | 23 |
| 15.10. | Severability. | 23 |
| 15.11. | Plan Documents. | 23 |
| 15.12. | Inconsistency. | 23 |
| 15.13. | Subordination. | 23 |
| 15.14. | Withholding and Reporting Requirements. | 23 |
| 15.15. | Post-Effective Date Fees; Final Decree. | 24 |
| 15.16. | De Minimis Distributions. | 24 |
| 15.17. | Method of Payment; Payments, Filings, and Notices Only on Business Days. | 24 |

**Exhibits to Plan:**

| | |
|---|---|
| Exhibit A | Reorganized Certificate |
| Exhibit B | Reorganized By-Laws |
| Exhibit C | Avoidance Actions and Preserved Litigation Claims |
| Exhibit D | Assumed and Rejected Executory Contracts and Unexpired Leases |

**INTRODUCTION**

Three-Five Systems, Inc. and TFS-DI, Inc., the debtors and debtors-in-possession in these Chapter 11 cases, propose the following joint plan of reorganization for the resolution of their outstanding claims and equity interests.

**All holders of Claims against, and Equity Interests in, the Debtors are encouraged to read this Plan, the Disclosure Statement, and the related materials in their entirety.**

Subject to the restrictions on modifications set forth in Bankruptcy Code § 1127, Bankruptcy Rule 3019, and Section 14.01 of this Plan, the Debtor reserves the right to alter, amend, or modify this Plan one or more times before its substantial consummation.

# ARTICLE 1.
## DEFINITIONS AND RULES OF INTERPRETATION

Except as otherwise specifically noted, all capitalized terms used in this Plan have the meanings ascribed to them in this Article 1. Any term used in this Plan that is not defined in this Plan but is defined in the Bankruptcy Code or the Bankruptcy Rules retains the meaning ascribed to that term in the Bankruptcy Code or the Bankruptcy Rules. Whenever the context requires, terms include the plural as well as the singular and the masculine gender as well as the feminine gender. "Including" is to be interpreted as all-inclusive and not to exclude items not listed, as in "including, without limitation."

As used in this Plan, the following terms have the following meanings:

**1.01. Administrative Claim.** A Claim for any cost or expense of administration of the Chapter 11 Cases Allowed under Bankruptcy Code §§ 503(b), 507(b) or 546(c)(2) and entitled to priority under Bankruptcy Code § 507(a)(1), including: (a) fees payable under 28 U.S.C. § 1930; (b) actual and necessary costs and expenses incurred in the ordinary course of a Debtor's business; (c) actual and necessary costs and expenses of preserving an Estate or administering the Chapter 11 Cases; and (d) all Professional Fee Claims to the extent Allowed by Final Order under Bankruptcy Code §§ 330, 331, or 503.

**1.02. Administrative Claims Bar Date.** The first Business Day that is 30 days after the Confirmation Date.

**1.03. Administrative Fee Order.** The *Order Establishing Interim Fee Payment And Expense Reimbursement Procedures*, entered in TFS's Chapter 11 Case by the Bankruptcy Court on October 31, 2005.

**1.04. Affiliate.** With respect to any specified Person, any other Person directly or indirectly controlling or controlled by or under direct or indirect common control with such Person and, with respect to any specified natural Person, any other Person having a relationship by blood, marriage, or adoption not more remote than first cousins with such natural Person. For purposes of this definition, "controlling" (including, with correlative meanings, the terms "controlled by" and "under direct or indirect common control with"), as used with regard to any Person, means the possession, directly or indirectly, of the power to direct or cause the direction of the management or policies of that Person, whether through the ownership of voting securities, by agreement, or otherwise.

**1.05. Allowed.** (a) A Claim that has been allowed by a Final Order or (b) with respect to any Claim against, or Equity Interest in, a Debtor: (i) (A) proof of which, request for payment of which, or application for allowance of which, was filed or deemed filed with the Bankruptcy Court on or before the Bar Date, the Administrative Claims Bar Date, the Professional Fee Bar Date, or the Rejection Damages Bar Date, as applicable, for filing proofs of claim or equity interest or requests for payment for Claims of that type against a Debtor or other applicable date established by order of the Bankruptcy Court, even if that date is after the Bar Date, the Administrative Claims Bar Date, the Professional Fee Bar Date, or the Rejection Damages Bar Date, as applicable; or (B) a Claim or Equity Interest that is allowed by a Debtor; (ii) listed as undisputed, liquidated, and non-contingent in the Schedules and as to which no objection to its allowance or motion to estimate for purposes of allowance has been interposed within the applicable period of limitation fixed by this Plan, the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court; and (iii) in each instance, a Claim or Equity Interest as to which no objection to its allowance or motion to estimate for purposes of allowance has been interposed within the applicable period of limitation fixed by this Plan, the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court or, as to which any such objection or motion has been interposed, to the extent allowed by a Final Order. The

term "Allowed," when used to modify a reference in this Plan to any Claim, Equity Interest, Class of Claims, or Class of Equity Interests, means a Claim or Equity Interest (or any Claim or Equity Interest in any Class) that is so allowed (*e.g.,* an "Allowed Secured Claim" is a Claim that has been allowed to the extent of the value, as determined by the Bankruptcy Court under Bankruptcy Code § 506(a), of any interest in property of an Estate securing such Claim).

**1.06. Avoidance Actions.** All statutory causes of action preserved for the Consolidated Estate under Bankruptcy Code §§ 510, 542, 543, 544, 545, 547, 548, 549, and 550 that a Debtor or an Estate may have against any Person including those listed in Exhibit C to this Plan. Failure to list an Avoidance Action in this Plan does not constitute any Debtor's, either Estate's, or the Consolidated Estate's waiver or release of that Avoidance Action.

**1.07. Bankruptcy Code.** Title 11 of the United States Code, as amended from time to time and applicable to the Chapter 11 Cases.

**1.08. Bankruptcy Court.** The United States District Court for the District of Arizona and, to the extent of any reference under 28 U.S.C. § 157, the bankruptcy unit of the District Court under 28 U.S.C. § 151.

**1.09. Bankruptcy Rules.** Collectively, the Federal Rules of Bankruptcy Procedure as promulgated under 28 U.S.C. § 2075 and any Local Rules of the Bankruptcy Court applicable to the Chapter 11 Cases.

**1.10. Bar Date.** The date or dates fixed by the Bankruptcy Court by which Persons asserting a Claim against, or Equity Interest in, a Debtor (*except* Administrative Claims, Professional Fee Claims, and Rejection Damages Claims) are required to file a proof of claim or equity interest or a request for payment or be forever barred from asserting a Claim against or Equity Interest in a Debtor or its property, from voting on this Plan, and from sharing in distributions under this Plan.

**1.11. Benefit Plans.** All benefit plans of whatever type or nature that a Debtor provided to its employees, whether now in existence or previously terminated, including all 401(k) plans, medical insurance plans, accidental death and dismemberment plans, disability plans, tuition reimbursement plans, dental insurance plans, and life insurance plans, and any rights of employees to extended coverage arising from any Benefit Plan whether under the terms of the Benefit Plans, under COBRA, or under applicable law.

**1.12. Business Day.** Any day other than a Saturday, Sunday, or legal holiday (as defined in Bankruptcy Rule 9006).

**1.13. Cash.** Currency, checks drawn on a bank insured by the Federal Deposit Insurance Corporation, certified checks, money orders, negotiable instruments, and wire transfers of immediately available funds.

**1.14. Chapter 11 Cases.** The cases under Chapter 11 of the Bankruptcy Code in which TFS and TFS-DI are the debtors and debtors-in-possession, pending before the Bankruptcy Court.

**1.15. Claim.** A claim against a Debtor or its property as defined in Bankruptcy Code § 101(5), including: (a) any right to payment, whether or not the right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured arising at any time before the Effective Date; or (b) any right to an equitable remedy for breach of performance if the breach gives rise to a right to payment, whether or not the right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

**1.16. Class.** A category consisting of holders of Claims or Equity Interests substantially similar in nature to the Claims or Equity Interests of other holders placed in that category, as designated in Article 4 of this Plan.

**1.17. COBRA.** The Consolidated Omnibus Budget Reconciliation Act of 1986, as amended, and the regulations promulgated under that act.

**1.18. Collateral.** Any property or interest in property of an Estate subject to a Lien to secure the payment or performance of a Claim, the Lien not being subject to avoidance under the Bankruptcy Code or otherwise invalid under the Bankruptcy Code or applicable state law.

**1.19. Committee.** Any Official Committee of Unsecured Creditors or Official Committee of Equity Holders appointed in the Chapter 11 Cases under Bankruptcy Code § 1102.

**1.20. Confirmation Date.** The date the Bankruptcy Court enters the Confirmation Order.

**1.21. Confirmation Hearing.** The hearing held by the Bankruptcy Court to consider confirmation of this Plan under Bankruptcy Code § 1129.

**1.22. Confirmation Order.** The order of the Bankruptcy Court confirming this Plan in accordance with the Bankruptcy Code. The Confirmation Order need not necessarily be a Final Order.

**1.23. Consolidated Estate.** The Estates of the Debtors resulting from the substantive consolidation of the Debtors in accordance with Section 2.02 of this Plan.

**1.24. Contingent Claim.** Any Claim for which a proof of claim has been filed with the Bankruptcy Court that: (a) was not filed in a fixed amount, or has not accrued and depends on a future event that has not occurred and may never occur; and (b) has not been Allowed on or before the Confirmation Date.

**1.25. Creditor.** Any holder of a Claim, whether or not the Claim is an Allowed Claim, encompassed within the statutory definition set forth in Bankruptcy Code § 101(10).

**1.26. Cure.** The payment on the Effective Date of Cash or other property as a condition to the assumption or assumption and assignment by a Debtor of an executory contract or unexpired lease of nonresidential real property, in accordance with Bankruptcy Code § 365(b).

**1.27. D&O Policy.** Any directors and officers liability insurance policy or any applicable errors and omissions policy applicable to a Debtor's directors and officers.

**1.28. Debtors.** Collectively, TFS and TFS-DI as debtors and debtors-in-possession in the Chapter 11 cases under Bankruptcy Code §§ 1107 and 1108.

**1.29. Disallowed.** In reference to a Claim, a Claim or any portion of a Claim that has been disallowed, overruled, withdrawn, or expunged by Final Order.

**1.30. Disclosure Statement.** The written disclosure statement relating to this Plan (including all exhibits and schedules) in the form approved by the Bankruptcy Court under Bankruptcy Code § 1125 and Bankruptcy Rule 3017.

**1.31. Disputed.** With respect to Claims or Equity Interests, any Claim or Equity Interest: (a) listed in the Schedules as unliquidated, disputed, or contingent, or as to which a Debtor or any other party-in-interest has (i) interposed a timely objection or request for estimation, or (ii) sought to equitably subordinate or otherwise limit recovery in accordance with the Bankruptcy Code and the Bankruptcy Rules, in each instance where such listing, objection, request for estimation, or action to limit recovery has not been withdrawn or determined by a Final Order; or (b) that is a Contingent Claim.

**1.32. Distribution Record Date.** The date, established in the Confirmation Order, by which the identities of the holders of Claims and Equity Interests are determined for purposes of entitlement to receive distributions under this Plan.

**1.33. Effective Date.** The first Business Day that is eleven days after the Confirmation Date and on which (a) no stay of the Confirmation Order is in effect and (b) all conditions to effectiveness set forth in Section 11.02 of this Plan have been satisfied or waived in accordance with the terms of this Plan.

**1.34. Equity Interest.** Any equity interest in TFS represented by any class or series of common or preferred stock issued before the Effective Date, and any warrants, options, or rights to purchase any common or preferred stock.

**1.35. Equity Related Claim.** Any Claim arising from the rescission of a purchase or sale of an Equity Interest, or for damages arising from the purchase or sale of an Equity Interest, or any Claim by any Person that asserts equitable or contractual rights of reimbursement, contribution, or indemnification arising from such Claim, including any Claim that has been or may be asserted against a Debtor or its officers and directors asserting violations of federal securities laws including actions under Sections 11 and 15 of the Securities Act and Sections 10(b) and 20 of the Exchange Act, and Rule 10b-5 promulgated by the SEC under the Exchange Act, and any applicable non-federal law.

**1.36. Estates.** The estates for each Debtor created in the Chapter 11 Cases under Bankruptcy Code § 541.

**1.37. Exchange Act.** The Securities Exchange Act of 1934, as amended, and the regulations promulgated under that act.

**1.38. Final Order.** An order or judgment of the Bankruptcy Court: (a) as to which the time to appeal, petition for certiorari, or move for reargument or rehearing has expired, or as to which any right to appeal, petition for certiorari, reargue, or rehear has been waived in writing in form and substance satisfactory to the Debtors; and (b) if an appeal, writ of certiorari, or reargument or rehearing has been sought, as to which the highest court to which the order was appealed, or certiorari, reargument or rehearing was sought, has determined or denied the appeal, writ of certiorari, reargument, or rehearing, and the time to take any further appeal, petition for writ of certiorari, or move for reargument or rehearing has expired; but the filing of a motion under Rule 59 or 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules, with respect to the order does not prevent the order from being a Final Order.

**1.39. General Unsecured Claim.** Any Claim against a Debtor other than a Secured Claim, an Administrative Claim, a Priority Tax Claim, a Priority Claim, or an Equity Related Claim.

**1.40. Gross Assets.** All property of the Consolidated Estate as vested in Reorganized TFS as of the Effective Date in accordance with Section 12.01 of this Plan.

**1.41. Intercompany Claim.** Any Claim held by one Debtor against the other Debtor arising at any time before the Effective Date.

**1.42. IRS.** The Internal Revenue Service.

**1.43. Legal Interest Rate.** The legal rate of interest on Allowed General Unsecured Claims under Bankruptcy Code § 726(a)(5), determined as the federal judgment rate as of the Confirmation Date under 28 U.S.C. § 1961(a).

**1.44. Lien.** A lien as defined in Bankruptcy Code § 101(37), except a lien that has been avoided in accordance with Bankruptcy Code §§ 544, 545, 546, 547, 548, or 549.

**1.45. Maximum Amount.** With respect to any Disputed Claim: (a) the amount to which Reorganized TFS and the holder of the Disputed Claim agree; or (b) any amount the Bankruptcy Court estimates or determines under Bankruptcy Code § 502(c); or (c) absent any agreement, estimation, or determination, the amount set forth in the proof of claim filed by the holder of the Disputed Claim, or, if no amount is so set forth, the amount set forth in the Schedules for the Disputed Claim, or, if no amount is so set forth, the amount Reorganized TFS estimates in its good faith discretion.

**1.46. Net Assets.** All assets of Reorganized TFS (*i.e.,* Gross Assets) remaining after payments to Allowed Administrative Claims, Allowed Priority Tax Claims, Allowed Priority Claims, Allowed Miscellaneous Secured Claims, and Allowed Secured Tax Claims.

**1.47. Person.** Any individual, corporation, partnership, limited liability company, limited liability partnership, joint venture, association, joint-stock company, trust, unincorporated association or organization, governmental agency or associated political subdivision.

**1.48. Petition Date.** Either September 8, 2005, the date on which TFS filed its voluntary petition commencing its Chapter 11 Case, or September 22, 2005, the date on which TFS-DI filed its voluntary petition commencing its Chapter 11 Case, whichever is appropriate to the context in which the term is used.

**1.49. Plan.** This Joint Plan, either in its present form or as it may be amended, supplemented, or modified from time to time in accordance with the terms of this Plan, including, except where the context otherwise requires, all its annexed exhibits.

**1.50. Plan Documents.** Collectively, the Reorganized Certificate and the Reorganized By-Laws, copies of which are attached as exhibits to this Plan, and any other contracts, instruments, releases, and other agreements or documents to be executed in order to consummate the transactions contemplated under this Plan or otherwise necessary to effect and further evidence the terms and conditions of this Plan and the documents listed in this Section 1.50.

**1.51. Preserved Litigation Claims.** Subject to the releases provided for in Section 12.05 of this Plan, all rights, claims, torts, liens, actions, causes of action, avoiding powers, proceedings, debts, contracts, judgments, offsets, damages, and demands in law or in equity, including Avoidance Actions, whether known or unknown, contingent or otherwise, that a Debtor or an Estate may have against any Person, including those listed in Exhibit C to this Plan. Failure to list a Preserved Litigation Claim in this Plan does not constitute either Debtor's, either Estate's, the Consolidated Estate's, or Reorganized TFS's waiver or release of that Preserved Litigation Claim.

**1.52. Preserved Ordinary Course Administrative Claim.** Any Administrative Claim based on liabilities incurred by a Debtor in the purchase, lease, or use of goods and services in the ordinary course of its business including Administrative Claims on account of services provided after the Petition Date to a Debtor by its employees, and Claims for unpaid rent or contract payments arising under a rejected executory contract or unexpired lease of nonresidential real property after the Petition Date and before the effective date of the rejection of that contract or lease, but excluding Professional Fee Claims.

**1.53. Priority Claim.** Any Claim (or portion of a Claim) entitled to priority under Bankruptcy Code § 507(a) other than Priority Tax Claims and Administrative Claims.

**1.54. Priority Tax Claim.** Any Claim of a governmental unit entitled to priority under Bankruptcy Code § 507(a)(8).

**1.55. Professional.** A Person: (a) employed in the Chapter 11 Cases in accordance with an order of the Bankruptcy Court under Bankruptcy Code §§ 327, 328, 363, or 1103 and to be compensated for services under Bankruptcy Code §§ 327, 328, 329, 330, and 331 or order of the Bankruptcy Court; or (b) for whom compensation and reimbursement has been Allowed by a Final Order under Bankruptcy Code § 503(b).

**1.56. Professional Fee Bar Date.** The first Business Day that is 60 days after the Confirmation Date.

**1.57. Professional Fee Claim.** An Administrative Claim for compensation and reimbursement of expenses of a Professional rendered or incurred before the Effective Date submitted in accordance with Bankruptcy Code §§ 328, 330, 331, or 503(b).

**1.58. Pro Rata.** A proportionate share, such that the ratio of the consideration distributed on account of an Allowed Claim or Equity Interest in a Class to the amount of such Allowed Claim or Equity Interest is the same as the ratio of the amount of the consideration distributed on account of all Allowed Claims or Equity Interests in that Class to the amount of all Allowed Claims or Equity Interests in that Class.

**1.59. Rejection Claims.** All Claims arising from a Debtor's rejection of an executory contract or unexpired lease of nonresidential real property either during the Chapter 11 Cases or in connection with this Plan, including Claims for future rents under Bankruptcy Code § 502(b)(6) or future contract payments and Unsecured Claims for unpaid rent or contract payments accruing before the Petition Date. Rejection Claims do not include Claims for unpaid rent or contract payments arising under a rejected executory contract or unexpired lease of nonresidential real property after the Petition Date and before the effective date of the rejection of such contract or lease—those Claims are Preserved Ordinary Course Administrative Claims.

**1.60. Rejection Claims Bar Date.** The first Business Day that is 30 days after the Confirmation Date.

**1.61. Reorganized By-Laws.** The Amended and Restated By-Laws of Reorganized TFS, substantially in the form of Exhibit B to this Plan.

**1.62. Reorganized Certificate.** The Amended and Restated Certificate of Incorporation of Reorganized TFS, substantially in the form included as Exhibit A to this Plan.

**1.63. Reorganized TFS.** Three-Five Systems, Inc., on and after the Effective Date.

**1.64. Retiree Benefits.** Payments to any Person for the purpose of providing or reimbursing payments for retired employees of a Debtor and of any other entities as to which a Debtor is obligated to provide retiree benefits and the eligible spouses and eligible dependents of such retired employees, for medical, surgical, or hospital care benefits, or in the event of death of a retiree under any plan, fund, or program (through the purchase of insurance or otherwise) maintained or established by a Debtor before the Petition Date, as that plan, fund, or program was then in effect or as later amended.

**1.65. Schedules.** The schedules of assets and liabilities, the list of holders of interests, and the statements of financial affairs filed by a Debtor under Bankruptcy Code § 521 and Bankruptcy Rule 1007, as the schedules, list, and statements may have been or may be supplemented or amended from time to time.

**1.66. SEC.** The United States Securities and Exchange Commission.

**1.67. Secured Claim.** Any Claim (a) listed in the Schedules as a liquidated, noncontingent, and undisputed secured Claim, or (b) reflected in a proof of claim as a secured Claim, secured by a Lien on Collateral to the extent of the value of the Collateral, as determined in accordance with Bankruptcy Code § 506(a), or, if the Claim is subject to setoff under Bankruptcy Code § 553, net of the setoff.

**1.68. Secured Tax Claim.** Any Claim of any governmental unit or associated political subdivision, including principal taxes and accrued and unpaid interest under applicable law from the Petition Date, that is secured by a Lien on property of an Estate by operation of applicable law including every Claim for unpaid real, personal property, or *ad valorem* taxes.

**1.69. Securities Act.** The Securities Act of 1933, as amended, and the regulations promulgated under that act.

**1.70. TFS.** Three-Five Systems, Inc., a Delaware corporation, as debtor and debtor-in-possession in Chapter 11 Case No. 05-bk-17104 in the Bankruptcy Court under Bankruptcy Code §§ 1107 and 1108.

**1.71. TFS-DI.** TFS-DI, Inc., a Delaware corporation, as debtor and debtor-in-possession in Chapter 11 Case No. 05-bk-18689 in the Bankruptcy Court under Bankruptcy Code §§ 1107 and 1108.

## ARTICLE 2.
## SUBSTANTIVE CONSOLIDATION OF ESTATES

**2.01. Request for Substantive Consolidation.** This Plan constitutes a motion for substantive consolidation of the liabilities and properties of both Debtors. This Plan requests that entry of the Confirmation Order constitute the Bankruptcy Court's granting of that motion.

**2.02. Effect of Substantive Consolidation.** As a result of the substantive consolidation of the liabilities and properties of both Debtors, as of the Effective Date: (a) the Chapter 11 Cases will be deemed to be consolidated into the Chapter 11 Case of TFS as a single consolidated case; (b) all property of the Estate of each Debtor will be deemed to be property of the Consolidated Estate for purposes of distributions under the Plan; (c) all Claims against each Estate will be deemed to be Claims against the Consolidated Estate, any proof of claim filed either Debtor will be deemed to be a single Claim filed against the Consolidated Estate, and all duplicate proofs of claim for the same Claim filed against either Debtor will be deemed to be expunged; (d) all Intercompany Claims will be deemed Disallowed, discharged and eliminated, and no distributions under this Plan will be made on account of Intercompany Claims; (e) all guarantees by one Debtor of the obligations of the other Debtor or in favor of the other Debtor will be deemed eliminated, and no distributions under this Plan will be made on account of Claims based on such guarantees; and (f) for purposes of determining the availability of the right of setoff under Bankruptcy Code § 553, both Debtors will be treated as one consolidated entity so that, subject to the other provisions of Bankruptcy Code § 553, debts due to one Debtor may be set off against the debts of the other Debtor.

**2.03. No Impact On Secured Claims.** Substantive consolidation under this Plan has no effect on valid, enforceable and unavoidable Liens, except for Liens that secure a Claim that is eliminated by virtue of substantive consolidation and Liens against Collateral that are extinguished by virtue of substantive consolidation. Substantive consolidation under this Plan does not create a Claim in a Class different from the Class in which a Claim would have been placed in the absence of substantive consolidation. The substantive consolidation contemplated in this Plan does not affect any applicable date for purposes of pursuing any Avoidance Actions.

**2.04. Effect On Corporate Structure.** Substantive consolidation under this Plan is intended to cause a merger of TFS-DI into TFS. As of the Effective Date, the Debtors and Reorganized TFS will enter into,

perform, prepare, and file whatever agreements, filings, or other documents are necessary to effect the merger of TFS-DI into TFS.

## ARTICLE 3.
## TREATMENT OF UNCLASSIFIED CLAIMS

**3.01. Unclassified Claims.** As provided in Bankruptcy Code § 1123(a)(1), Administrative Claims and Priority Tax Claims are not classified for purposes of voting on, or receiving distributions under, this Plan. Holders of Administrative Claims and Priority Tax Claims are not entitled to vote on this Plan but, rather, are treated separately in accordance with Sections 3.02 and 3.04 of this Plan and under Bankruptcy Code § 1129(a)(9)(A).

**3.02. Allowed Administrative Claims.**

      **a. Generally.** Each Allowed Administrative Claim (other than a Preserved Ordinary Course Administrative Claim or Professional Fee Claim) will be paid in full in Cash (or otherwise satisfied in accordance with its terms) on the latest of: (a) the Effective Date, or as soon after that date as practicable; (b) any date the Bankruptcy Court may fix, or as soon after that date as practicable; (c) 30 days after the Claim is Allowed; and (d) any date on which the holder of the Claim and the Debtors or Reorganized TFS agree.

      **b. Requests for Payment.** All requests for payment of an Administrative Claim (other than a Preserved Ordinary Course Administrative Claim or Professional Fee Claim) must be served on Reorganized TFS and filed with the Bankruptcy Court no later than the Administrative Claims Bar Date. Any holder of an Administrative Claim (other than a Preserved Ordinary Course Administrative Claim or Professional Fee Claim) that fails to file and serve its request by the Administrative Claims Bar Date will be forever barred from asserting its Administrative Claim against either Debtor or Reorganized TFS.

**3.03. Preserved Ordinary Course Administrative Claims.** Each Allowed Preserved Ordinary Course Administrative Claim will be paid in full in Cash at Reorganized TFS's election either: (a) in accordance with the terms and conditions under which the Claim arose; or (b) in the ordinary course of Reorganized TFS's business. Payments will be made without further action by the holder of the Preserved Ordinary Course Administrative Claim.

**3.04. Allowed Priority Tax Claims.** Any Allowed Priority Tax Claim will be paid in full in Cash on the later of the Effective Date (or as soon after that date as practicable) and 30 days after the Claim is Allowed, but the Debtors or Reorganized TFS may elect to pay any Allowed Priority Tax Claim through regular installment payments in Cash of a total value, as of the Effective Date, equal to the Allowed amount of the Claim, over a period ending not later than five years after the Petition Date, and in a manner not less favorable than the most favored General Unsecured Claim provided for by this Plan. If the Debtors or Reorganized TFS so elect, the installment payments will be made in equal quarterly installments of principal plus simple interest on the unpaid portion of the Allowed Priority Tax Claim accruing from the Effective Date at the rate of six percent per year. The first payment will be made on the latest of: (a) the Effective Date, or as soon after that date as practicable; (b) 30 days after the Claim is Allowed, or as soon after than date as practicable; and (c) another date on which the holder of the Claim and the Debtors or Reorganized TFS agree. Reorganized TFS retains the right to prepay any Allowed Priority Tax Claim, or any remaining balance of such a Claim, in full or in part, at any time on or after the Effective Date without premium or penalty.

**3.05. Professional Fee Claims.** Each Allowed Professional Fee Claim will be paid in full in Cash: (a) no later than three days after the Professional Fee Claim is Allowed; (b) on any other terms the holder of an Allowed Professional Fee Claim and the Debtors or Reorganized TFS may agree; or (c) in accordance

with the terms of any applicable administrative procedures order entered by the Bankruptcy Court. Each Person seeking an award by the Bankruptcy Court of Professional Fees must file with the Bankruptcy Court and serve on Reorganized TFS its final application for allowance of compensation for services rendered and reimbursement of expenses incurred through the Confirmation Date within 60 days after the Effective Date.

**3.06. Post-Confirmation Date Professional Fees.** All claims of Professionals for services rendered or expenses incurred after the Confirmation Date in connection with the Chapter 11 Cases and this Plan including those relating to consummation of this Plan, any appeal of the Confirmation Order, the preparation, filing, and review of Professional Fee Claims, the prosecution of Avoidance Actions and Preserved Litigation Claims, and the resolution of Disputed Claims, will be paid by Reorganized TFS on receipt of an invoice, or on such other terms as Reorganized TFS and the Professional may agree, without the need for further Bankruptcy Court authorization or entry of a Final Order. Reorganized TFS has ten days after receiving any such invoice to object to any item contained in that invoice. If Reorganized TFS and any Professional cannot agree on the amount of post-Confirmation Date fees and expenses to be paid to the Professional, the Bankruptcy Court will determine that amount.

## ARTICLE 4.
## CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS

**4.01. Summary of Classification.** In accordance with Bankruptcy Code § 1123(a)(1), all Claims and Equity Interests (except those Claims receiving treatment as set forth in Article 2 of this Plan) are placed in the Classes described below for all purposes, including voting on, confirmation of, and distributions under, this Plan:

| | | |
|---|---|---|
| Class 1 | Priority Claims | Unimpaired. Deemed to accept. |
| Class 2 | Secured Tax Claims | Unimpaired. Deemed to accept. |
| Class 3 | Miscellaneous Secured Claims | Unimpaired. Deemed to accept. |
| Class 4 | General Unsecured Claims | Unimpaired. Deemed to accept. |
| Class 5 | Equity Interests and Equity Related Claims | Unimpaired. Deemed to accept. |

**4.02. Specific Classification.**

**a. Class 1 – Priority Claims.** Class 1 consists of all Priority Claims other than Priority Tax Claims.

**b. Class 2 – Secured Tax Claims.** Class 2 consists of all Secured Tax Claims. Each holder of a Secured Tax Claim is considered to be in its own separate subclass within Class 2, and each such subclass is deemed to be a separate Class for purposes of this Plan.

**c. Class 3 – Miscellaneous Secured Claims.** Class 3 consists of all Secured Claims other than the Secured Tax Claims in Class 2. Each holder of a Miscellaneous Secured Claim is considered to be in its own separate subclass within Class 3, and each such subclass is deemed to be a separate Class for purposes of this Plan.

**d. Class 4 – General Unsecured Claims.** Class 4 consists of all General Unsecured Claims.

**e. Class 5 – Equity Interests and Equity Related Claims.** Class 5 consists of all Equity Interests and Equity Related Claims.

# ARTICLE 5.
# TREATMENT OF CLAIMS AND EQUITY INTERESTS

## 5.01. Class 1—Priority Claims.

**a. Impairment and Voting.** Class 1 is unimpaired by this Plan. All holders of Allowed Priority Claims are deemed to have accepted this Plan and will not be solicited to vote on this Plan.

**b. Treatment.** Each holder of an Allowed Priority Claim other than a Priority Tax Claim will receive Cash in an amount equal to its Allowed Priority Claim on the later of: (i) the Effective Date, or as soon after that date as practicable; and (ii) 30 days after the Priority Claim is Allowed; unless, before the later of these two dates, the holder of the Claim and Reorganized TFS agree in writing to a different date.

## 5.02. Class 2—Secured Tax Claims.

**a. Impairment and Voting.** Class 2 is unimpaired by this Plan. All holders of Allowed Secured Tax Claims are deemed to have accepted this Plan and will not be solicited to vote on this Plan.

**b. Treatment.** Each holder of an Allowed Secured Tax Claim will receive Cash in an amount equal to its Allowed Secured Tax Claim on the latest of: (i) the Effective Date, or as soon after that date as practicable; (ii) any date the Bankruptcy Court may fix, or as soon after that date as practicable; (iii) 30 days after the Secured Tax Claim is Allowed; and (iv) the date on which the Secured Tax Claim is scheduled to be paid in the ordinary course of business under applicable law or regulation; unless, before the latest of the above dates, the holder of the Claim and Reorganized TFS agree in writing to a different date. Each holder of an Allowed Secured Tax Claim retains all Liens on applicable property of the applicable Estate arising under applicable law until that holder's Allowed Secured Tax Claim is paid in full under this Section 5.02.b. If any portion of any Allowed Secured Tax Claim is not paid in accordance with this Section 5.02.b and Reorganized TFS does not make that payment within ten days after notice of non-payment is received from the holder of the Claim, the holder may proceed with applicable state law remedies for collection of all amounts owing but not paid in accordance with this Section 5.02.b.

## 5.03. Class 3—Miscellaneous Secured Claims.

**a. Impairment and Voting.** Class 3 is unimpaired by this Plan. All holders of Allowed Miscellaneous Secured Claims are deemed to have accepted this Plan and will not be solicited to vote on this Plan.

**b. Treatment.** Each holder of an Allowed Miscellaneous Secured Claim will receive Cash in an amount equal to its Allowed Miscellaneous Secured Claim on the latest of: (i) the Effective Date, or as soon after that date as practicable; (ii) any date the Bankruptcy Court may fix, or as soon after that date as practicable; (iii) 30 days after the Miscellaneous Secured Claim is Allowed; and (iv) the date on which the Miscellaneous Secured Claim is scheduled to be paid in the ordinary course of business under applicable law or regulation; unless, before the latest of the above dates, the holder of the Claim and Reorganized TFS agree in writing to a different date. Each holder of an Allowed Miscellaneous Secured Claim retains all Liens on applicable property of the applicable Estate arising under applicable law until that holder's Allowed Miscellaneous Secured Claim is paid in full under this Section 5.03.b. If any portion of any Allowed Miscellaneous Secured Claim is not paid in accordance with this Section 5.03.b and Reorganized TFS does not make that payment within ten days after notice of non-payment is received from the holder of the Claim, the holder may proceed with applicable state law remedies for collection of all amounts owing but not paid in accordance with this Section 5.03.b.

**5.04. Class 4—General Unsecured Claims.**

      **a. Impairment and Voting.** Class 4 is unimpaired by this Plan. All holders of Allowed General Unsecured Claims are deemed to have accepted this Plan and will not be solicited to vote on this Plan.

      **b. Treatment.**

         (i) *Amount of Distributions.* Each holder of an Allowed General Unsecured Claim will receive from Reorganized TFS Cash in an amount equal to the amount of the Allowed General Unsecured Claim plus interest accruing from the Petition Date through the Confirmation Date at the Legal Interest Rate.

         (ii) *Timing of Distributions.* Reorganized TFS will make at least partial distributions of Cash from the Net Assets to holders of Allowed General Unsecured Claims, beginning on the later of (A) the Effective Date, or as soon after that date as practicable and (B) 30 days after the General Unsecured Claim is Allowed, then continuing periodically until all Allowed General Unsecured Claims are paid in full and no Disputed General Unsecured Claims remain Disputed.

         (iii) *Entitlement to Distributions.* Only holders of Allowed General Unsecured Claims as of the Distribution Record Date will be entitled to receive distributions under this Plan.

**5.05. Class 5—Equity Interests and Equity Related Claims.**

      **a. Impairment and Voting.** Class 5 is unimpaired by this Plan. All holders of Allowed Equity Interests and Allowed Equity Related Claims are deemed to have accepted this Plan and will not be solicited to vote on this Plan.

      **b. Treatment.**

         (i) *Subordination.* Under Bankruptcy Code § 510(b), each Equity Related Claim is subordinated to all Claims or Equity Interests senior or equal to the Claim or Equity Interest represented by the Equity Related Claim, except that if the Equity Related Claim relates to TFS's common stock, the Equity Related Claim has the same priority as the Equity Interests represented by that common stock.

         (ii) *Amount of Distributions.* Each holder of an Allowed Equity Interest or Allowed Equity Related Claim will receive from Reorganized TFS Cash in an amount equal to the holder's Pro Rata share of the Net Assets remaining after distributions to holders of Allowed General Unsecured Claims under Section 5.04.b(i) of this Plan are complete.

         (iii) *Timing of Distributions.* Reorganized TFS will only begin distributions from the Net Assets on account of Equity Interests or Equity Related Claims once sufficient Net Assets are reserved for complete distributions to holders of Allowed General Unsecured Claims under Section 5.04.b(i) of this Plan (including sufficient reserves in the Maximum Amount for all General Unsecured Claims that are Disputed at that time). Reorganized TFS will make periodic Pro Rata distributions to holders of Allowed Equity Interests and Allowed Equity Related Claims of all Net Assets converted to Cash, net of any reserves Reorganized TFS believes in good faith are necessary to pay costs associated with converting remaining non-Cash Net Assets into Cash, making such distributions, winding up the affairs of Reorganized TFS, and completing any other task or responsibility reasonably contemplated by this Plan. Once all Net Assets have been converted to Cash, Reorganized TFS will make a final Pro Rata distribution to holders of Allowed Equity Interests and Allowed Equity Related Claims in full and final satisfaction and redemption of all Allowed Equity Interests and Allowed Equity Related Claims.

(iv) *Entitlement to Distributions.* Only holders of Allowed Equity Interests or Allowed Equity Related Claims as of the Distribution Record Date will be entitled to receive distributions under this Plan.

# ARTICLE 6.
## IMPLEMENTATION

**6.01. Plan Funding.**

    **a. Effective Date Payments.** Funds needed to make Cash payments on the Effective Date on account of Allowed Administrative Claims, Allowed Priority Tax Claims, Allowed Priority Claims, Allowed Miscellaneous Secured Claims, and Allowed Secured Tax Claims under this Plan will come from the Gross Assets, which constitutes the entirety of Reorganized TFS's assets on the Effective Date. The assets remaining after payment of all Allowed Administrative Claims, Allowed Priority Tax Claims, Allowed Priority Claims, Allowed Miscellaneous Secured Claims, and Allowed Secured Tax Claims under this Plan will constitute the Net Assets.

    **b. Net Assets.** Funds needed to make Cash distributions on and after the Effective Date on account of Allowed General Unsecured Claims, Allowed Equity Interests, and Allowed Equity Related Claims will come from the Net Assets. From and after the Effective Date, Reorganized TFS must use all reasonable efforts to liquidate or otherwise convert all non-Cash Net Assets into Cash. No partial, full, periodic, or final distribution to any holder of any Claim or Equity Interest under this Plan will be made in any form other than Cash.

    **c. Disputed Claims.** Reorganized TFS must manage distributions from the Net Assets so as to reserve sufficient Cash to make appropriate distribution under this Plan on account of any Disputed Claim that would have been entitled to distribution from the Net Assets if that Disputed Claim were an Allowed Claim on the Effective Date in the Maximum Amount. If and when any Disputed Claim becomes an Allowed Claim, Cash sufficient to make appropriate distribution under this Plan on account of that Claim will be made from the reserved Cash. If a Disputed Claim becomes a Disallowed Claim, all Cash reserved for possible distribution under this Plan on account of that Claim will become available for distribution to Allowed Equity Interests and Allowed Equity Related Claims under Section 5.05.b of this Plan.

**6.02. Certificate of Incorporation and By-Laws.** As of the Effective Date and without any further action by the shareholders or directors of the Debtors or Reorganized TFS, TFS's certificate of incorporation and by-laws will be amended and restated substantially in the forms of the Reorganized Certificate and the Reorganized By-Laws. The Reorganized Certificate and the Reorganized By-Laws will prohibit (to the extent required by Bankruptcy Code § 1123(a) and (b)) the issuance of non-voting equity securities. After the Effective Date, Reorganized TFS may amend its certificate of incorporation and by-laws as permitted by applicable law.

**6.03. Purpose of Reorganized TFS.** The Reorganized Certificate and the Reorganized By-Laws will provide that Reorganized TFS's business purposes are limited to: (a) liquidating or otherwise converting all Net Assets into Cash and make distributions to holders of Allowed Claims and Allowed Equity Interests under this Plan; and (b) winding up the affairs of Reorganized TFS after all such distributions are completed.

**6.04. Private Company Status.** On the Effective Date, (a) Reorganized TFS will maintain no registration under the Exchange Act and will file no reports with the SEC or otherwise be subject to the reporting requirements under the Exchange Act, and (b) Reorganized TFS's shares will not be traded on any recognized stock exchange or over-the-counter securities market.

**6.05. Cancellation of Instruments and Agreements.** On the Effective Date, all agreements, instruments, and other documents relating to any Equity Interests, other than the Equity Interests themselves, will automatically terminate such that all obligations under all such agreements, instruments, and other documents will be deemed fully and finally waived, released, canceled, extinguished, and discharged.

**6.06. Effectiveness of Instruments and Agreements.** On the Effective Date, all instruments, agreements, and documents issued, entered into, delivered, or filed under this Plan, including the Plan Documents, and any instrument, agreement, or document entered into, delivered, or filed in connection with any of the foregoing, will be deemed to be effective, binding, and enforceable in accordance with their respective terms.

**6.07. No Corporate Action Required**. As of the Effective Date: (a) the adoption, execution, delivery, and implementation of all contracts, leases, instruments, releases, and other agreements related to or contemplated by this Plan; and (b) the other matters provided for under, or in furtherance of, this Plan involving corporate action required of a Debtor, will be deemed to have occurred and become effective as provided in this Plan, and will be deemed authorized and approved in all respects without further order of the Bankruptcy Court or any further action by a Debtor's shareholders or directors.

**6.08. Directors and Officers.**

> **a. Initial Board of Directors.** The initial board of directors of Reorganized TFS as of the Effective Date will consist of one director—Carl Young.

> **b. Initial Officers.** The initial officers of Reorganized TFS as of the Effective Date will consist of: (i) Carl Young—President; and (ii) Sid Harris—Secretary.

> **c. Indemnification and Insurance.** Reorganized TFS will provide all its directors and officers with indemnification rights and a D&O Policy, and will compensate its directors and officers, in accordance with practices customary for entities of its type. Reorganized TFS will assume any pre-Petition Date indemnification obligations to any directors and officers employed with a Debtor as of the Petition Date and continuing in office as of and after the Effective Date.

**6.09. Operation Pending Effective Date.** Until the Effective Date, the Debtors will continue to operate their businesses subject to all applicable requirements of the Bankruptcy Code and the Bankruptcy Rules.

### ARTICLE 7.
### EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**7.01. Assumption or Rejection of Executory Contracts and Unexpired Leases.** The executory contracts and unexpired leases between a Debtor and any Person are dealt with as follows:

> **a. Assumption of Executory Contracts and Unexpired Leases.** All executory contracts and unexpired leases set forth on the schedule of assumed executory contracts and unexpired leases filed with the Bankruptcy Court as part of Exhibit D to this Plan will be deemed assumed by Reorganized TFS or assumed and assigned (as indicated on Exhibit D to this Plan) as of the Effective Date, except for any executory contract or unexpired lease: (i) that has been rejected in accordance with a Final Order entered before the Confirmation Date; or (ii) as to which a motion to reject has been filed with the Bankruptcy Court before the Confirmation Date.

> **b. Rejection of Executory Contracts and Unexpired Leases.** All executory contracts and unexpired leases either (i) set forth on the schedule of rejected executory contracts and unexpired leases filed with the Bankruptcy Court as part of Exhibit D to this Plan or (ii) existing but not listed on Exhibit D

to this Plan will be deemed rejected as of the Effective Date, except for any executory contract or unexpired lease that has been assumed or rejected in accordance with a Final Order entered on or before the Confirmation Date.

**7.02. Approval of Assumption or Rejection.** Entry of the Confirmation Order constitutes: (a) the approval under Bankruptcy Code § 365 of the assumption or assumption and assignment of the executory contracts and unexpired leases assumed or assumed and assigned under this Plan or otherwise during the Chapter 11 Cases; and (b) the approval under Bankruptcy Code § 365 of the rejection of the executory contracts and unexpired leases rejected under this Plan or otherwise during the Chapter 11 Cases. Notwithstanding anything contained in this Section 7.02 to the contrary, the Debtors retain the right to add or change the treatment (assumed or rejected) of any executory contract or unexpired lease on Exhibit D to this Plan, thus changing the treatment of the contract or lease under this Plan, at any time within 30 days after the Effective Date.

**7.03. Cure of Defaults.** On the Effective Date or as soon after that date as practicable, Reorganized TFS will Cure any defaults under any executory contract or unexpired lease assumed or assumed and assigned under this Plan in accordance with Bankruptcy Code § 365(b)(1). Reorganized TFS will not, and need not as a condition to assuming or assuming and assigning any executory contract or unexpired lease under this Plan, Cure any default relating to a Debtor's failure to perform a nonmonetary obligation under any executory contract or unexpired lease.

**7.04. Rejection Claims Bar Date.** All Rejection Claims arising from the rejection of any executory contract or unexpired lease under this Plan are required to be filed with the Bankruptcy Court no later than the Rejection Claims Bar Date. Any such Claim not filed within that time will be forever barred. With respect to any executory contract or unexpired lease rejected by a Debtor before the Confirmation Date, the deadline for filing a Rejection Claim remains the deadline set forth in the order of the Bankruptcy Court authorizing that rejection. If such an order did not contain such a deadline, the deadline for filing a Rejection Claim arising from that rejection is the Rejection Claims Bar Date.

**7.05. Indemnification Obligations.** Any obligation of a Debtor to indemnify any Person serving as a fiduciary of any employee benefit plan or employee benefit program of a Debtor, under charter, by-laws, contract, or applicable state law is deemed to be an executory contract and rejected by Reorganized TFS as of the Confirmation Date (but subject to the occurrence of the Effective Date). Any obligation of a Debtor to indemnify, reimburse, or limit the liability of any Person, including but not limited to any officer or director of a Debtor, or any agent, professional, financial advisor, or underwriter of any securities issued by a Debtor related to any acts or omissions occurring before the Petition Date is rejected, canceled, and discharged under this Plan as of the Confirmation Date (but subject to the occurrence of the Effective Date), and any Claims resulting from such obligations are Disallowed under Bankruptcy Code § 502(e). Notwithstanding any of the foregoing, nothing contained in this Plan affects, impairs, or prejudices the rights of any Person covered by any applicable D&O Policy with respect to any such policy. Moreover, Reorganized TFS will maintain in force for three years following the Effective Date appropriate D&O Policies covering pre-Effective Date directors and officers of a Debtor and containing substantially the same provisions and limits of coverage as the policies that were in force on the Petition Date. Reorganized TFS will be responsible for paying the deductible or retention amounts under the D&O Policies for that three-year period.

**7.06. Benefit Plans.**

    **a. Generally.** On the Effective Date, all Benefit Plans will be either assumed or rejected and terminated as of the Confirmation Date as indicated on Exhibit D to this Plan, if not earlier terminated or assumed by a Debtor before the Confirmation Date. Any such terminations will be completed according to the terms and conditions of each Benefit Plan and effected in conformity with all statutory and

regulatory requirements including any applicable notice provisions. Any undistributed, vested benefits of the terminated Benefit Plans will be distributed to the participants as provided by statute, the applicable regulations, and the Benefit Plans' provisions.

**b. Regulatory Approvals.** In order to ensure that the Benefit Plans' terminations comply with the terms of the Benefit Plans, applicable statutes, and regulations, the Debtors will obtain any necessary approvals of the relevant regulatory agencies, such as the Pension Benefit Guaranty Corporation, the IRS, and the U.S. Department of Labor, in respect of such terminations. The Bankruptcy Court will retain jurisdiction to hear and determine any disputes relating to the termination of any Benefit Plans.

**c. Retirees.** If any Claim of a retiree against a Debtor gives a Debtor an indemnification claim under an agreement between a Debtor and any Person, the Debtors will, if necessary or appropriate, assign the indemnification claim to the retiree. Notwithstanding anything in this Section 7.06 or elsewhere in this Plan to the contrary, Reorganized TFS will continue to honor all obligations of either Debtor owed to any retiree under any Benefit Plan as of the Confirmation Date solely to the extent, and for the duration of the period, the Debtor is contractually or legally obligated to provide those benefits, subject to any rights of the Debtor or Reorganized TFS under applicable law.

## ARTICLE 8.
## CONFIRMATION WITHOUT ACCEPTANCE FROM ALL IMPAIRED CLASSES

**8.01. No Impaired Classes.** No Class of Claims or Equity Interests is impaired under this Plan. Accordingly, all Classes under this Plan are deemed to have accepted this Plan and no Class will be solicited to accept or reject this Plan.

**8.02. Use of § 1129(b).** If any Class under this Plan is determined to be impaired under Bankruptcy Code § 1124 and is then deemed to have rejected the Plan or votes to reject the Plan in accordance with Bankruptcy Code § 1126, the Debtors may use the provisions of Bankruptcy Code § 1129(b) to satisfy the requirements for Confirmation of the Plan.

## ARTICLE 9.
## DETERMINATION OF CLAIMS

**9.01. Objections to Claims.** Notwithstanding the occurrence of the Effective Date, and except as to any Claim that has been Allowed before the Effective Date, Reorganized TFS may object to the allowance of any Claim against the Debtor or seek estimation of any Claim on any grounds permitted by the Bankruptcy Code.

**a. Threshold.** Reorganized TFS will prosecute, at its expense, any objection to a Claim but may choose, at its sole discretion, not to object to, or to settle, any Claim asserted in an amount of $10,000.00 or less over the amount set forth in the Schedules for that Claim.

**b. Deadline.** All objections to Claims must be brought by filing the appropriate pleading in the Bankruptcy Court before the first Business Day that is 180 days after the Effective Date, but the Bankruptcy Court may approve a later date on Reorganized TFS's motion filed (but not necessarily heard) before the first Business Day that is 180 days after the Effective Date.

**9.02. Distributions on Allowance or Disallowance of Disputed Claims.** No distributions will be made to any holder of a Claim unless and until the Claim becomes an Allowed Claim. If a Claim is not an Allowed Claim as of the Effective Date, distributions on account of that Claim will commence only when the Claim becomes an Allowed Claim after the Effective Date or as otherwise specifically provided in this

Plan. If a Disputed Claim becomes an Allowed Claim, Reorganized TFS will make a distribution in accordance with the terms of this Plan applicable to Claims of the Class in which that Claim resides.

**9.03. Contingent Claims.** Until a Contingent Claim becomes an Allowed Claim or is Disallowed, the Claim will be treated as a Disputed Claim for all purposes under this Plan. The holder of a Contingent Claim will be entitled to a distribution under this Plan only when the Contingent Claim becomes an Allowed Claim. Any Contingent Claim for reimbursement or contribution held by a Person that may be liable with a Debtor on a Claim of a Creditor is Disallowed as of the Effective Date if: (a) that Creditor's Claim is Disallowed; (b) the Claim for reimbursement or contribution is contingent as of the Effective Date; or (c) that Person asserts a right of subrogation to the rights of the Creditor under Bankruptcy Code § 509.

# ARTICLE 10.
## AVOIDANCE ACTIONS, PRESERVED LITIGATION CLAIMS

**10.01. Retention and Reservation.** Subject to Section 12.05 of this Plan, in accordance with Bankruptcy Code § 1123(b)(3), all Avoidance Actions and Preserved Litigation Claims are retained and reserved for Reorganized TFS, which is designated as the Consolidated Estate's representative under Bankruptcy Code § 1123(b)(3)(B) for purposes of the Avoidance Actions and Preserved Litigation Claims.

**10.02. Prosecution.** Reorganized TFS will have the authority to prosecute, defend, compromise, settle, and otherwise deal with any Avoidance Actions and Preserved Litigation Claims, and will do so in its capacity as a representative of the Consolidated Estate in accordance with Bankruptcy Code § 1123(b)(3)(B). Reorganized TFS will pay the fees and costs associated with litigating the Avoidance Actions and the Preserved Litigation Claims from the Net Assets. Reorganized TFS will have sole discretion to determine in its business judgment which Avoidance Actions and Preserved Litigation Claims to pursue, which to settle, and the terms and conditions of those settlements.

# ARTICLE 11.
## CONDITIONS PRECEDENT

**11.01. Conditions to Confirmation.** The following are conditions precedent to confirmation of this Plan:

**a. Approval of Disclosure Statement.** The Bankruptcy Court enters a Final Order approving the Disclosure Statement.

**b. Form of Confirmation Order.** The Bankruptcy Court enters the Confirmation Order in form and substance reasonably acceptable to the Debtors. If the Debtors are unable to reach an agreement with any party regarding the form and substance of the Confirmation Order, the Bankruptcy Court will resolve all such disputes.

**c. Substance of Confirmation Order.** The Confirmation Order contains the following:

(i) The provisions of the Confirmation Order are nonseverable and mutually dependent;

(ii) Approval of the assumption, rejection, or assumption and assignment of all executory contracts and unexpired leases under this Plan;

(iii) Approval of the Plan Documents;

(iv) All executory contracts or unexpired leases assumed and assigned by a Debtor during the Chapter 11 Cases or under this Plan remain in full force and effect for the benefit of Reorganized TFS or any assignees of such contracts or leases, as the case may be, notwithstanding any provision in any

such contract or lease (including those described in Bankruptcy Code § 365(b)(2) and (f)) that prohibits or conditions such assignment or transfer or that enables, permits, or requires termination of such contract or lease;

(v) The Debtors are released and discharged from all obligations arising under all executory contracts and unexpired leases rejected by a Debtor during the Chapter 11 Cases or under this Plan;

(vi) Confirmation of this Plan is not likely to be followed by the need for further financial reorganization of either Debtor or Reorganized TFS;

(vii) The Debtors are discharged in accordance with Section 12.02 of this Plan;

(viii) Findings and conclusions sufficient to provide a basis for, and supporting the Bankruptcy Court's authorization of, substantive consolidation of the Estates in accordance with Sections 2.01 and 2.02 of this Plan;

(ix) In accordance with Bankruptcy Code § 1123(b)(3)(B), Reorganized TFS is appointed as the representative and agent of the Consolidated Estate to prosecute, compromise, or abandon any Avoidance Actions and Preserved Litigation Claims in accordance with this Plan; and

(x) Retention of jurisdiction of the Bankruptcy Court to the fullest extent permissible by applicable law, and at least to the extent contemplated by Article 13 of this Plan.

**11.02. Conditions to Effectiveness.** The following are conditions precedent to the occurrence of the Effective Date:

**a.** The Confirmation Date occurs;

**b.** Reorganized TFS retains sufficient Cash (from all applicable sources) on the Effective Date to make distributions to holders of Allowed Claims required by this Plan to be made on the Effective Date; and

**c.** Each of the Plan Documents and to be issued, entered into, delivered, or filed under this Plan are issued, entered into, delivered, or filed and are effective.

**11.03. Waiver of Conditions.** The Debtors may waive any condition to confirmation or the Effective Date, in whole or in part, at any time without notice, an order of the Bankruptcy Court, or any further action other than proceeding to confirmation and consummation of this Plan.

## ARTICLE 12.
## TITLE TO PROPERTY; THIRD PARTY RIGHTS AND RELEASES

**12.01. Vesting of Assets.** Except as provided in this Plan, the Confirmation Order, or the Plan Documents, all property of the Consolidated Estate will vest in Reorganized TFS on the Effective Date free and clear of all Liens, Claims, and Equity Interests existing before the Effective Date. From and after the Effective Date, Reorganized TFS may operate its business and may use, acquire, and dispose of property free of any restrictions of the Bankruptcy Code, including the employment of, and payment to, Professionals except as otherwise provided in this Plan or the Confirmation Order.

**12.02. Discharge.** Except as provided in this Plan or the Confirmation Order, the rights granted under this Plan and the treatment of Claims and Equity Interests under this Plan are in exchange for and in complete satisfaction, discharge, and release of, all Claims including any interest accrued on General Unsecured

Claims from the Petition Date. Except as provided in this Plan or the Confirmation Order, confirmation of this Plan discharges the Debtors and Reorganized TFS from all Claims or other debts that arose before the Confirmation Date, and all debts of the kind specified in Bankruptcy Code §§ 502(g), 502(h) or 502(i), whether or not: (a) a proof of claim based on such debt is filed or deemed filed under Bankruptcy Code § 501; (b) a Claim based on such debt is Allowed under Bankruptcy Code § 502; or (c) the holder of a Claim based on such debt has accepted this Plan. Without limiting the foregoing, the discharge granted under this Plan is granted to the fullest extent allowed under Bankruptcy Code §§ 1141(a), 1141(b), 1141(c), and 1141(d)(1).

**12.03. Injunction.** Except as provided in this Plan or the Confirmation Order, as of the Confirmation Date, all entities that have held, currently hold, or may hold a Claim or other debt or liability that is unclassified by this Plan or that is classified by Article 4 of this Plan or is subject to a distribution under this Plan, or an Equity Interest or other right of an equity security holder that subject to a distribution under this Plan are permanently enjoined from taking any of the following actions on account of any such Claims, debts, liabilities, Equity Related Claims, or Equity Interests or rights: (a) commencing or continuing in any manner any action or other proceeding against either Debtor or Reorganized TFS (including any officer or director or other Person acting as a representative or otherwise on behalf of either Debtor or Reorganized TFS); (b) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree, or order against either Debtor, Reorganized TFS, or their respective property; (c) creating, perfecting, or enforcing any Lien or encumbrance against either Debtor, Reorganized TFS, or their respective property; (d) asserting a right of setoff, subrogation, or recoupment of any kind against any debt, liability, or obligation due to either Debtor, Reorganized TFS, or their respective property; and (e) commencing or continuing any action, in any manner, in any place, that does not comply with or is inconsistent with the provisions of this Plan or the Bankruptcy Code. Nothing in this Section 12.03 or elsewhere in this Plan is to be construed or is to have the effect of extinguishing, prohibiting, or otherwise limiting, the right of any holder of a Claim to assert a right to setoff or recoupment arising in connection with that Claim as part of the resolution and treatment of that Claim under this Plan.

**12.04. Exculpation.** None of the Debtors or any of their respective officers, directors, shareholders, or employees have or will incur any liability to any holder of a Claim or Equity Interest, or any other party in interest, or any of their respective members or former members, agents, employees, representatives, financial advisors, attorneys, or affiliates, or any of their predecessors, successors, or assigns, for any act or omission in connection with, relating to, or arising out of, the Chapter 11 Cases, the negotiation and pursuit of confirmation of this Plan, the consummation of this Plan, or the administration of this Plan, excluding: (a) all the foregoing entities' acts or omissions constituting gross negligence, bad faith, or willful misconduct, as finally determined by a court of competent jurisdiction; and (b) the obligations of the Debtors and Reorganized TFS under this Plan. All the foregoing entities are entitled to rely reasonably on the advice of counsel with respect to their duties and responsibilities under this Plan or in the context of the Chapter 11 Cases.

**12.05. Release.** As of the Effective Date, except as set forth in this Plan, each holder of a Claim, whether Allowed or Disallowed at any time, irrevocably releases and forever discharges each of the Debtors and Reorganized TFS, and its successors, assigns, agents, shareholders, directors, officers, employees, attorneys, consultants, advisors, and Affiliates, from all claims, debts, liabilities, demands, offsets, obligations, costs, expenses, actions, and causes of action of every nature and description, known and unknown, relating to, directly or indirectly, the Chapter 11 Cases, the Debtors, or Reorganized TFS that the holder now has or at any time may hold, by reason of any matter, cause, or thing occurred, done, omitted, or suffered to be done before the Effective Date, except claims for amounts due under this Plan.

**12.06. Preserved Litigation Claims and Disputed Claims Resolution.** Notwithstanding anything to the contrary in this Plan, any non-Debtor party to a Preserved Litigation Claim or a Disputed Claim that has obtained or obtains relief from the automatic stay or from the injunction provisions contained in Section

12.03 of this Plan to pursue resolution of their Claim in a forum other than the Bankruptcy Court will not be deemed to have violated any provision of this Plan by seeking a resolution as to Allowance, Disallowance, or amount of such Claim in such other forum, but the classification and distributions on account of any such Claim, once liquidated and Allowed or Disallowed, remain solely and exclusively subject to the Bankruptcy Court's continuing jurisdiction under Article 13 of this Plan and the terms and conditions of this Plan.

**12.07. Preservation of Insurance.** The discharge and release from Claims as provided in this Plan, except as necessary to be consistent with this Plan, do not diminish or impair the enforceability of any insurance policy that may cover Claims against a Debtor or any other Person.

<div align="center">

**ARTICLE 13.**
**RETENTION OF JURISDICTION**

</div>

**13.01. Jurisdiction.** Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court will retain as much jurisdiction over the Chapter 11 Cases after the Effective Date as legally permissible including jurisdiction to:

    **a.** Allow, disallow, determine, liquidate, classify, estimate, or establish the amount, priority, or secured or unsecured status of any Claim, and resolve any request for payment of any Administrative Claim and any objection to the Allowance or priority of any Claim;

    **b.** Grant or deny any applications for allowance of compensation or reimbursement of expenses authorized under the Bankruptcy Code or this Plan;

    **c.** Resolve any matters related to the assumption, assumption and assignment, or rejection of any executory contract or unexpired lease to which a Debtor is a party and to hear, determine and, if necessary, liquidate any Claims arising from, or Cure related to, assumption or rejection;

    **d.** Ensure that distributions required under this Plan are accomplished in accordance with this Plan;

    **e.** Decide or resolve any motions, adversary proceedings, contested matters, and any other matters and grant or deny any applications or motions involving a Debtor that may be pending on the Effective Date;

    **f.** Enter any necessary or appropriate orders to implement or consummate this Plan's provisions and all contracts, instruments, releases, and other agreements or documents created in connection with this Plan or the Disclosure Statement;

    **g.** Resolve any cases, controversies, suits, or disputes that may arise in connection with the consummation, interpretation, or enforcement of this Plan, or any Person's obligations incurred in connection with this Plan;

    **h.** Hear and determine any motion or application to modify this Plan before or after the Effective Date under Bankruptcy Code § 1127 or modify the Disclosure Statement or any contract, instrument, release, or other agreement or document issued, entered into, filed, or delivered in connection with this Plan or the Disclosure Statement; or hear or determine any motion or application to remedy any defect or omission or reconcile any inconsistency in any Bankruptcy Court order, this Plan, the Disclosure Statement, or any contract, instrument, release, or other agreement or document issued, entered into, filed or delivered in connection with this Plan or the Disclosure Statement, in such manner as may be necessary or appropriate to consummate this Plan, to the extent authorized by the Bankruptcy Code;

**i.** Issue injunctions, enter and implement other orders, or take any other necessary or appropriate actions to restrain any entity's interference with consummation or enforcement of this Plan;

**j.** Enter and implement any necessary or appropriate orders if the Confirmation Order is for any reason modified, stayed, reversed, revoked, or vacated;

**k.** Determine any other matters that may arise in connection with or related to this Plan, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release, or other agreement or document issued, entered into, filed, or delivered in connection with this Plan, the Disclosure Statement or the Confirmation Order;

**l.** Issue a final decree and enter an order closing the Chapter 11 Cases; and

**m.** Adjudicate the Disputed Claims, the Avoidance Actions, and the Preserved Litigation Claims and any other cause of action or claims of a Debtor.

## ARTICLE 14.
## AMENDMENT AND WITHDRAWAL OF PLAN

**14.01. Amendment of Plan.** At any time before the Confirmation Date, the Debtors may alter, amend, or modify this Plan under Bankruptcy Code § 1127(a) as long as doing so does not materially and adversely affect the treatment and rights of the holders of Claims and Equity Interests under this Plan. After the Confirmation Date but before substantial consummation of this Plan as defined in Bankruptcy Code § 1101(2), the Debtors or Reorganized TFS may, under Bankruptcy Code § 1127(b), institute proceedings in the Bankruptcy Court to remedy any defect or omission or reconcile any inconsistencies in this Plan, the Disclosure Statement, the Plan Documents, or the Confirmation Order, and any matters necessary to carry out the purposes and effects of this Plan as long as such proceedings do not materially and adversely affect the treatment of holders of Claims or Equity Interests under this Plan. The Debtors must serve prior notice of such proceedings in accordance with the Bankruptcy Rules or applicable order of the Bankruptcy Court.

**14.02. Revocation or Withdrawal of Plan.** The Debtors reserve the right to revoke or withdraw this Plan at any time before the Confirmation Date. If withdrawn or revoked, this Plan will be deemed void and nothing contained in this Plan may be deemed a waiver of any Claims by or against a Debtor or any other Person in any further proceedings involving a Debtor or an admission of any sort, and this Plan and any transaction contemplated by this Plan may not be admitted into evidence in any proceeding.

## ARTICLE 15.
## MISCELLANEOUS

**15.01. Effecting Documents; Further Transactions; Timing.** The Debtors, Reorganized TFS, and all other parties to the Plan Documents are authorized and directed as of the Effective Date, and without further order of the Bankruptcy Court, to execute, deliver, file, or record all Plan Documents and other contracts, instruments, releases, and other agreements or documents, and to take all actions necessary or appropriate to effect and further evidence the terms of this Plan. All transactions required to occur on the Effective Date under the terms of this Plan are deemed to have occurred simultaneously.

**15.02. Exemption From Transfer Taxes.** In accordance with Bankruptcy Code § 1146(c): (a) the issuance, distribution, transfer, and exchange of assets or property of the Consolidated Estate; (b) the execution, assignment, modification, or recording of any lease or sublease; and (c) the execution, delivery, or recording of a deed or other instrument of transfer under, in furtherance of, or in connection with, this Plan, the Confirmation Order, or any transaction contemplated above, or any transactions

arising out of, contemplated by, or in any way related to, the foregoing are not subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, or real estate transfer tax, or other similar tax or governmental assessment and the appropriate state or local government officials or agents are directed to forego the collection of any such tax or assessment and to accept for filing or recordation any of the foregoing instruments or other documents without the payment of any such tax or assessment.

**15.03. Binding Effect.** This Plan is binding on, and inures to the benefit of, the Debtors and the holders of all Claims and Equity Interests, including the holders of Equity Related Claims, and their respective successors and assigns.

**15.04. Governing Law.** Except to the extent that the Bankruptcy Code or other federal law is applicable or as provided in any document entered into in connection with this Plan, the rights, duties and obligations of the Debtors and any other Person arising under this Plan are governed by, and construed and enforced in accordance with, the internal laws of the State of Arizona, without giving effect to Arizona's choice of law provisions.

**15.05. Modification of Treatment of Claims.** Reorganized TFS reserves the right to modify the treatment of any Allowed Claim in any manner adverse only to the holder of that Claim at any time after the Effective Date on that holder's prior written consent.

**15.06. Setoffs and Recoupment.** The Debtors and Reorganized TFS may, but are not required to, set off or recoup against any Claim or Equity Interest and the payments or other distributions to be made under this Plan in respect of such Claim, Claims of any nature that arose before the Petition Date that either Debtor may have against the holder of such Claim or Equity Interest to the extent such Claims may be set off or recouped under applicable law, but neither the failure to do so nor the fact of any Claim or Equity Interest under this Plan becoming Allowed constitutes a waiver or release by either Debtor or Reorganized TFS of any such claim that it may have against such holder.

**15.07. Notices.** Any notice required or permitted to be provided under this Plan must be in writing and served by one of the following: (a) certified mail, return receipt requested, postage prepaid; (b) hand delivery; (c) reputable overnight courier service, freight prepaid; (d) e-mail; or (e) fax; addressed as follows:

|  |  |
|---|---|
| To the Debtors or Reorganized TFS: | Three-Five Systems, Inc.<br>7702 E. Doubletree Ranch Road<br>Suite 300<br>Scottsdale, AZ 85258<br>Attn:     Carl Young<br>Fax:      480.607.2626<br>E-mail:  cyoung@bridgellc.com |
| Copy to: | Squire, Sanders & Dempsey, L.L.P.<br>40 North Central Avenue, Suite 2700<br>Phoenix, Arizona 85004<br>Attn:     Thomas J. Salerno, Esq.<br>           Jordan A. Kroop, Esq.<br>Fax:      602.253.8129<br>E-mail:  tsalerno@ssd.com<br>           jkroop@ssd.com |

**15.08. Delivery of Notices.** If personally delivered, notice is deemed delivered on actual receipt; if faxed or e-mailed in accordance with this Plan, notice is deemed delivered noon of the first Business Day following transmission; if sent by overnight courier in accordance with this Plan, notice is deemed delivered noon of the first Business Day following deposit with such courier; and if sent by U.S. mail in accordance with this Plan, notice is deemed delivered as of the date of delivery indicated on the receipt issued by the relevant postal service; or, if the addressee fails or refuses to accept delivery, as of the date of that failure or refusal. Any party to this Plan may change its address for the purposes of this Plan by giving notice of the change.

**15.09. Termination of Statutory Committees.** All statutory committees appointed in the Chapter 11 Cases terminate on the Effective Date and have no further authority, duties, objections and responsibilities in respect of the Chapter 11 Cases after the Effective Date, except with respect to preparation, review and filing of, and objections to, applications for compensation and reimbursement of expenses.

**15.10. Severability.** If the Bankruptcy Court finds this Plan or any provision of this Plan to be invalid, illegal or unenforceable, or if the Bankruptcy Court cannot confirm this Plan under Bankruptcy Code § 1129, the Bankruptcy Court, at the Debtors' request, may retain the power to alter and interpret this Plan or any such provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the provision held to be invalid or unenforceable, and such provision will then become applicable as altered or interpreted. The Confirmation Order constitutes a judicial determination and provides that each term and provision of this Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable.

**15.11. Plan Documents.** Notwithstanding anything to the contrary contained in this Plan, including any reference in this Plan to documents in the forms annexed to this Plan as exhibits, the Debtors may revise any Plan Document (a) by filing such revised Plan Document with the Bankruptcy Court more than ten days before the deadline for voting on this Plan, or (b) with the written consent of all parties in interest that are entitled to vote on this Plan and are materially and adversely affected by such revision.

**15.12. Inconsistency.** If any inconsistency between this Plan and the Disclosure Statement exists, the provisions of this Plan govern. If any inconsistency between this Plan and any Plan Document exists, the provisions of the Plan Document govern.

**15.13. Subordination.** The distributions under this Plan take into account the relative priority of each Claim in connection with any contractual subordination provisions relating to such Claim. Accordingly, distributions under this Plan are not and may not be subject to levy, garnishment, attachment, or other legal process by any holder of a Claim or Equity Interest purporting to be entitled to the benefits of such contractual subordination, and all such holders are deemed to have waived all contractual subordination rights they otherwise may have had.

**15.14. Withholding and Reporting Requirements.** In connection with this Plan and all instruments issued in connection with this Plan, the Debtors or Reorganized TFS, as the case may be, must comply with all withholding and reporting requirements imposed by any federal, state, local, or foreign taxing authority, and all distributions under this Plan remain subject to any such withholding and reporting requirements. The Debtors and Reorganized TFS, as the case may be, may take all actions necessary to comply with such withholding and reporting requirements. Notwithstanding any other provision of this Plan, each holder of an Allowed Claim or Allowed Equity Interest that has received a distribution under this Plan has sole and exclusive responsibility for the satisfaction or payment of any tax obligation imposed by any governmental unit, including income, withholding, and other tax obligation on account of such distribution.

**15.15. Post-Effective Date Fees; Final Decree.** Reorganized TFS will be responsible for paying any post-Effective Date fees under 28 U.S.C. § 1930(a)(6) and filing post-confirmation reports until the Bankruptcy Court enters a final decree, which will be as soon as practicable after distributions under this Plan have commenced. Notice of application for a final decree need be given only to those holders of Claims and Equity Interests and other parties that, after the Effective Date, specifically request such notice.

**15.16. De Minimis Distributions.** No distributions of less than $10 will be made on account of any Claim or Equity Interest. If the holder of an Allowed Claim or Allowed Equity Interest does not receive a distribution owing to the provisions of this Section 15.16 on the Effective Date or any subsequent date, the Allowed Claim or Allowed Equity Interest remains eligible for distributions on the first date set for distributions when such distribution exceeds $10.

**15.17. Method of Payment; Payments, Filings, and Notices Only on Business Days.** Payments of Cash under this Plan must be made by check drawn on a domestic bank or by wire transfer from a domestic bank. Whenever any payment, distribution, filing, delivery, or notice to be made under this Plan is due on a day other than a Business Day, such payment, distribution, filing, delivery, or notice may instead be made, without interest or penalty, on the immediately following Business Day.

Dated:  January 6, 2006

<div style="margin-left: 40%;">

**THREE-FIVE SYSTEMS, INC.,** Debtor and Debtor-In-Possession

By:  ___/s/ Carl Young_____
        Carl Young
        Chief Restructuring Officer

**TFS-DI, INC.,** Debtor and Debtor-In-Possession

By:  ___/s/ Three-Five Systems, Inc._____
        Three-Five Systems, Inc.
        Sole Shareholder

    By:  ___/s/ Carl Young_____
            Carl Young
            Chief Restructuring Officer

</div>

**SQUIRE, SANDERS & DEMPSEY L.L.P.**

By:  ___/s/ Jordan A. Kroop_____
        Thomas J. Salerno
        Jordan A. Kroop
Two Renaissance Square, Suite 2700
40 North Central Avenue
Phoenix, Arizona 85004

Counsel for Debtors

Exhibit A

Reorganized Certificate

***To come***

Exhibit B

Reorganized By-Laws

***To come***

Exhibit C

Avoidance Actions and Preserved Litigation Claims

**_To come_**

Exhibit D

Assumed and Rejected Executory Contracts and Unexpired Leases

***To come***

**APPENDIX 2**

**SELECTED FINANCIAL DATA**

**EFFECTIVE DATE BALANCE SHEET**

**Three Five Systems, Inc.**
*APPENDIX 2 - Historical Unconsolidated Income Statement Data*

| | 12 months ending 12/31/2003 | 12 months ending 12/31/2004 | 10 months ending 10/31/2005 |
|---|---|---|---|
| **Net Sales** | $ 79,404,428.48 | $ 57,009,879.07 | $ 5,343,745.37 |
| **Total Cost of Sales** | 84,253,100.50 | 57,378,946.52 | 8,078,267.50 |
| **Gross Margin** | (4,848,672.02) | (369,067.45) | (2,734,522.13) |
| Total Admin Expenses | 9,380,634.03 | 9,148,963.88 | 11,086,990.88 |
| Total Sales Expenses | 3,967,867.02 | 7,078,943.54 | 1,895,568.57 |
| **Total SG&A** | 13,348,501.05 | 16,227,907.42 | 12,982,559.45 |
| **Total Engineering and R&D** | 11,299,424.25 | 2,429,017.63 | 569,342.88 |
| Impairment of Goodwill | | 21,350,131.12 | 12,902,587.91 |
| Impairment of Intellectual Property | | 1,850,187.95 | 3,067,935.58 |
| (Gain)/Loss on Sale of Assets | (72,954.79) | (325,262.16) | 21,422,377.83 |
| Amortization of Customer Lists/Distrib Rights | 2,043,159.53 | 1,893,159.53 | 462,748.80 |
| | - | | |
| **Total Operating Expenses** | 26,618,130.04 | 43,425,141.49 | 51,407,552.45 |
| **Operating Income** | (31,466,802.06) | (43,794,208.94) | (54,142,074.58) |
| **Interest & Other (Inc)/Exp** | (4,776,791.09) | 6,371,196.96 | 1,453,203.49 |
| **Profit Before Tax** | (26,690,010.97) | (37,423,011.98) | (52,688,871.09) |
| **Income Taxes** | 14,179,345.73 | (126,728.76) | 14,272.53 |
| **Net Income** | $ (40,869,356.70) | $ (37,296,283.22) | $ (52,703,143.62) |

JANUARY 5, 2006

**Three Five Systems, Inc.**
*APPENDIX 2 - ProForma Balance Sheet Data*

|  | | Projected 4/15/2006 |
|---|---|---|
| **ASSETS** | | |
| CASH AND CASH EQUIVALENT | $ | 4,992,275.56 |
| A/R Preserved Litigation Claims | | 5,868,000.00 |
| D&O Deposit held in Trust | | 350,000.00 |
| TOTAL ASSETS | $ | 11,210,275.56 |
| **LIABILITIES & EQUITY** | | |
| Pre Petition Claims | $ | 3,850,000.00 |
| Post Petition Administrative Expenses | | 400,000.00 |
| TOTAL LIABILITIES | $ | 4,250,000.00 |
| TOTAL LONG-TERM LIABILITIES | | - |
| TOTAL LIABILITIES | | 4,250,000.00 |
| TOTAL STOCKHOLDER'S EQUITY | $ | 6,960,275.56 |
| TOTAL LIABILITIES & EQUITY | $ | 11,210,275.56 |
| | | - |

JANUARY 5, 2006

# APPENDIX 3

## LIQUIDATION ANALYSIS

## APPENDIX 3 – LIQUIDATION ANALYSIS

# __Three Five Systems, Inc.__

The Debtors project that they will have not liquidated all of their assets and converted them to Cash as of the Effective Date of the Plan. During this period, the Debtors project that they will incur certain costs related to the administration and full consummation of the Plan.

Conversion to chapter 7 is likely to delay further the wind-down of the Estate and the distribution of monies to Creditors and holders of Equity Interests. This is because in a chapter 7 case, a trustee is appointed and additional time will be required for a chapter 7 trustee to become familiar with the Debtors' financial affairs. Under § 326(a) of the Bankruptcy Code, a chapter 7 trustee is entitled to compensation based on a percentage of all monies disbursed or turned over in the case to parties in interest, excluding the debtor. For these reasons, among others, the Debtors believe that conversion to a case under chapter 7 would result in (i) incremental, additional costs being borne by the Estate above those the Estate would incur under the Plan, (ii) lower distributions being received by, at least, holders of Equity Interests, and (iii) delays in distributions.

This liquidation analysis assumes that the Debtors would incur most of the costs incident to its chapter 11 liquidation in the course of a hypothetical chapter 7 liquidation, and also various incremental and additional costs caused by conversion to a chapter 7 case. Consequently, the chapter 7 costs described below are those projected incremental costs unique to a chapter 7 case that would otherwise not have been incurred under the Plan.

Underlying this liquidation analysis are a number of projections and assumptions that are inherently subject to significant uncertainties and contingencies beyond the control of the Debtors' management, and based on assumptions with respect to liquidation decisions that may be subject to change. Accordingly, there can be no assurance that the projected values reflected in this liquidation analysis would be realized if the Debtors were, in fact, to undergo such a chapter 7 liquidation, and actual results could vary materially from those shown here.

# Three Five Systems Inc.
## Computation of Projected Proceeds under a Hypothetical
## Chapter 7 Liquidation [1]

| | Notes | Assumed Recovery |
|---|---|---|
| **PROJECTED ASSETS** | | |
| Cash | (2) | $4,992,276 |
| Preserved Litigation Claims | (2) | 2,934,000 |
| D&O Deposit Held in Trust | (2) | 350,000 |
| | | $8,276,276 |
| **PROJECTED LIABILITIES** | | |
| Administrative Expense Reserve | (3) | 400,000 |
| Chapter 7 Trustee Fees | (4) | 250,000 |
| Chapter 7 Professional Fees | (5) | 500,000 |
| Chapter 7 Operating Expenses | (6) | 750,000 |
| Class 1 Priority Claims | (7) | 0 |
| Assets Available to Secured Creditors | | 6,376,276 |
| Estimated Secured Claims Classes 2 and 3 | | 0 |
| Assets Available to General Unsecured Claims | | 6,376,276 |
| Estimated General Unsecured Claims Class 4 | | 2,650,000 |
| Estimated Assets Available for Equity Interests and Equity Related Claims Class 5 under Chapter 7 | (8) | $3,726,276 |
| Estimated Assets Available for Equity Interests and Equity Related Claims Class 5 under Chapter 11 | (8) | $6,960,276 |
| Difference between Estimated Assets Available for Equity Interests and Equity Related Claims under Plan and Chapter 7 | | $3,234,000 |

# NOTES TO LIQUIDATION ANALYSIS

## 1. Timing and Nature of the Liquidation.

The Debtors project that a conversion to a case under chapter 7 would result in the wind-down of the Estate to take approximately twelve months (the "Chapter 7 Period"). Accordingly, the projected costs, described in notes 4, 5, and 6 below, are based on the projected incremental costs related to a chapter 7 case that would be incurred by the Debtors during this hypothetical chapter 7 liquidation.

## 2. Projected Assets Available at Effective Date.

The proceeds from liquidation of assets are projected to be less under a chapter 7 liquidation. The chapter 7 trustee would be required to liquidate the Estate's remaining assets and receivables to cash and based on the limited marketability and timing to convert such assets into cash, it is assumed that a discount in the range of 50% may be appropriate. The amount of cash available for distribution to Creditors and Equity Interest holders under a hypothetical chapter 7 case is, therefore, less than the total consideration contemplated under the Plan and described in this Disclosure Statement. Assets available on the Effective Date include Cash, and miscellaneous other assets, including accounts receivable, existing claims and Preserved Litigation Claims.

## 3. Administrative Expense Reserve.

Administrative expenses in the chapter 7 liquidation reflect the administrative expenses of the Estate before the Effective Date.

## 4. Chapter 7 Trustee Fees.

Under § 326(a) of the Bankruptcy Code, chapter 7 trustee fees are assumed to be approximately 3% of the total monies distributed by the chapter 7 trustee.

## 5. Chapter 7 Professional Fees.

Fees for the professionals that would be retained by a chapter 7 trustee including, without limitation, attorneys to represent the trustee to prosecute litigation and claims objections, accountants and tax advisors, are assumed to be approximately $500,000 for 12 months.

## 6. Chapter 7 Operating Expenses.

A chapter 7 trustee likely will incur additional overhead expenses associated with the wind-down, including, but not limited to, office overhead costs and staff to process claims and review documents, assist with claim reconciliation, objections and settlements and provide litigation support. It is assumed that these operation expenses will be approximately $750,000 for 12 months.

## 7. Priority Claims.

No additional priority claims are assumed to be allowed as a result of the hypothetical conversion to a chapter 7 case; however, it is possible with a new bar date that additional priority claims may arise. The amount of priority claims listed here is the same as that described in this Disclosure Statement.

## 8. Assets Available to Unsecured Claims.

In a chapter 7 liquidation there is typically one distribution to creditors at the completion of the case. Given the delays attendant with a chapter 7 process, a distribution of the assets may be delayed for an extended period of time in a chapter 7 as compared to the proposed distributions contemplated in the Plan.